Submitted on record and briefs April 20, affirmed May 24, 1989

BENNETT et al,
*Petitioners,*

*v.*

CITY OF DALLAS, Oregon, et al,
*Respondents.*

(LUBA 88-078; CA A51313)

773 P2d 1340

Wallace W. Lien, Salem, filed the brief for petitioners.

Mark Irick, Dallas, filed the brief for respondent City of Dallas.

William G. Paulus, and Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem, filed the brief for respondent Chemeketa Community College.

No appearance for respondent Polk County.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Petitioners seek review of LUBA's order affirming the conditional use permit by which the City of Dallas (city) allowed respondents Chemeketa Community College and Polk County to renovate the Academy School facility and use it for adult education and county office space. We affirm.

We quote the facts from LUBA's opinion:

"The Academy School originally was constructed in 1856. The building was used continuously for school purposes until recently closed. The property includes a playground, open area and ball field.

"The property is designated 'public school' on the City of Dallas Comprehensive Plan (plan). The property is zoned Residential High-Density (RHD), and is bordered on the north by LaCreole Creek, on the east by Main Street, on the south by Academy Street and on the west by Church Street. The areas to the north and west are zoned RHD, while the areas to the south and east are zoned Central Business District (CBD).

"As part of the proposal to remodel and convert the Academy School building, the existing ball field and playground will be eliminated to make room for construction of 120 off-street parking spaces."

Petitioners' first assignment is that LUBA erred by rejecting their contention that the conditional use violates a goal and several policies contained in city's comprehensive plan. The plan provisions, which are set out in the margin,[1]

---

[1] "City and county offices should be encouraged to remain in the Central Business District."

"GOAL: To maintain and enhance the quality of existing residential areas and encourage the development of a variety of housing types to meet the needs and desires of the community."

"High density residential development should be encouraged to locate around the Central Business District and shopping centers to get maximum use out of this currently served valuable land;

"High density residential development should have good access to arterial or collector streets and be located close to employment or shopping centers."

"Efforts should be made to maintain and conserve existing residential areas and housing stock within the community;

"The residential development of close-in vacant land, readily serviceable by a full range of urban services shall be encouraged. Vacant land within the current City limits shall be encouraged to be used before new areas are annexed, while additional annexation should occur in areas where services can be most easily extended."

are to the general effects that government offices should be "encouraged to remain" in the central business district (CBD) and that high density residential development should be promoted in proximity to the business area. Petitioners argue that city's decision offends those provisions, because it allows governmental activities, some of which were formerly conducted within the CBD, to be relocated in a high density residential zone that is near but outside the CBD.[2]

LUBA stated:

"We do not agree with petitioners' essential but unstated premise under this assignment of error that the above-quoted policies are approval standards applicable to conditional use permits.

"* * * As we have explained in prior cases, plan policies in acknowledged comprehensive plans may or may not be approval criteria applicable to a specific land use decision depending on their context and how they are worded. * * *

"Local governments may or may not make it clear in their plan and land use regulations how their plan goals and policies apply to such decisions as variances, conditional uses, plan and zone changes, etc. * * * Frequently, as in the present case, they do not. In such instances, this Board must determine whether the plan policies at issue constitute approval criteria applicable to the land use decision at issue.

"We conclude the cited plan policies are not approval criteria applicable to conditional use permit applications under the plan and zoning ordinance. These plan policies are interspersed with plan text and are written in very general, nonmandatory language. Although the plan could have made it clearer, we believe these policies express a general framework and general principles which guide the city's implementing land use regulations such as its zoning ordinance." (Citations and footnote omitted.)

*See also, e.g., McCoy v. Tillamook County,* 14 Or LUBA 108 (1985); *compare Downtown Comm. Assoc. v. City of Portland,* 80 Or App 336, 722 P2d 1258, *rev den* 302 Or 86 (1986).

■ We agree with LUBA that the plan provisions on which petitioners rely did not require city to disapprove this conditional use application. The policy relating to the location

---

[2] City has rezoned the area from the residential classification to CBD. The rezoning decision is not before us in this case.

of governmental offices says that city and county offices should be encouraged to remain in the CBD; it does not require that city deny any or all proposals by those bodies to locate offices in zones where they are permitted conditionally or outright, other than the CBD. *See* n 3, *infra.* The provision does not purport to be a decisional standard, mandatory or otherwise.

The goal and policies relating to the location of high density residential development are of marginal or no relevance to this conditional use application. Those provisions do not suggest that all uses other than residential are precluded in all areas proximate to the CBD. Although the provisions do state a policy of preserving existing residential areas, the Academy School site was not being used for residential purposes when the conditional use was allowed or, apparently, at any other time since the building was constructed in 1856.[3]

Petitioners rely on section 177(1) of the city zoning ordinance, which requires that conditional use proposals "be consistent with the Comprehensive Plan." Petitioners assert that that "requirement * * * transform[s] otherwise non-regulatory language [in the plan policies] into 'approval criteria.'" That argument is circular. The meaning of the plan provisions, and the way in which they can or must be applied to particular conditional use proposals, are not altered by the general requirement of plan compliance in the ordinance. We reject petitioners' first assignment.[4]

Petitioners contend in their second assignment that the proposed elimination of the ball field violates section 177(4) of the zoning ordinance, which requires conditional use proposals and approvals to "preserve environmental assets of particular interest to the community." City found that the school building is also an environmental asset, that the renovation of the building, which is part of the proposal, is necessary for its preservation and that the conversion of the ball

---

[3] City stated in its findings that, after the site was included in the residential zone, the school use continued "as a pre-existing nonconforming use." However, the "governmental structure or land use" that city allowed is one of the conditional uses that the zoning ordinance authorizes in the zone. Petitioners argued unsuccessfully to LUBA that the proposed use does not come within the definition of that conditional use in the ordinance. They do not renew that contention here.

[4] The reasons for our rejection of petitioners' assignment differ somewhat from LUBA's and make it unnecessary for us to discuss its reasoning at length.

field to parking space is essential to provide required or necessary parking and access for the proposed use. LUBA agreed with city that section 177(4) "does not require the preservation of all environmental assets" and that it allows a "balancing of the value of two environmental assets in a situation where it is not possible to save both." So do we, and we conclude that city's decision did not violate the section.

Affirmed.