Argued and submitted March 5, 1991, decision of Court of Appeals affirmed on different grounds, order of LUBA reversed and remanded to LUBA for further proceedings July 9, 1992

Murphy L. CLARK,
*Petitioner on Review,*

*v.*

JACKSON COUNTY,
Darrell Stanley and Eugene Stanley,
*Respondents on Review.*

(LUBA 90-004; CA A65380; SC S37566)

836 P2d 710

Murphy L. Clark, petitioner on review *pro se*, argued the cause and filed the petition for review.

John R. Hassen, of Blackhurst, Hornecker, Hassen & Thorndike & Ervin B. Hogan, Medford, argued the cause for respondents on review Darrell Stanley and Eugene Stanley; with him on the responses to the petition was Daniel C. Thorndike. Also on the joint response was Arminda J. Brown, Jackson County Counsel, Medford, on behalf of respondent on review Jackson County.

Arminda J. Brown, Jackson County Counsel, Medford, argued the cause and filed a response for respondent on review Jackson County.

FADELEY, J.

## FADELEY, J.

Jackson County granted a conditional use permit for mining shale on a 40-acre portion of a 400-acre tract owned by the Stanleys. The entire tract was zoned Exclusive Farm Use (EFU) and used as livestock pasture. A county ordinance usually restricted granting of conditional use permits within an EFU zone to cases where the proposed use is to be situated on "generally unsuitable land" for agricultural purposes. The county interpreted its ordinance to be concerned only with the agricultural suitability of the 40-acre portion and granted the permit. On an appeal by Clark, a neighbor, LUBA interpreted the county ordinance to require that the suitability question be decided by looking to the entire 400-acre tract and overturned the permit.

Jackson County and the Stanleys petitioned for judicial review of LUBA's denial of the conditional use permit. The Court of Appeals reversed LUBA and remanded the matter to LUBA. The Court of Appeals' decision was based on two grounds: (1) the county's findings show that the 40 acres would not support any cognizable level of farming activity, and (2) LUBA treated the 40 acres as the area to which the "generally unsuitable" criteria applied in an earlier remand of the same case to the county and cannot now require that suitability of the 40-acre mining site be determined by looking at the agricultural suitability of the entire 400-acre tract of which the 40 acres is but a part. *Clark v. Jackson County*, 103 Or App 377, 380, 797 P2d 1061 (1990).

■ Our decision on review rests on different grounds than that of the Court of Appeals. We affirm the Court of Appeals' decision because LUBA exceeded its statutory authority on review by imposing on the acknowledged ordinance a construction contradicting the county's interpretation, where the county's interpretation was consistent with the wording, purpose, and policy of its acknowledged ordinance.

The criterion of "generally unsuitable land" is found in Jackson County's Land Development Ordinance (LDO) 218.060, which provides in part:

"1) A conditional use may be approved by the County only when findings can be made that the proposed use meets the

standards of Section 260.040 and the proposed use and/or new parcel:

"\* \* \* \* \*

"D) Is situated upon generally unsuitable land for the production of farm crops and livestock, considering the terrain, adverse soil or land conditions, drainage and flooding, vegetation, location, and size of tract, unless findings conclusively demonstrate that:

"i) The proposed use will result in a more efficient and effective use of the parcel in view of its value as a natural resource; or

"ii) No feasible alternative sites in the area exist which shall have less impact on agricultural land."

There is no factual dispute about the characteristics of the 40 acres at issue. In their respective orders, however, LUBA and Jackson County applied different interpretations of "generally unsuitable land" and thereby produced opposite results.

When it considered the application for the mining use permit, the county found that the 40-acre quarry site covered by the mining permit is quite rocky but produces enough grass to afford some pasture about one week out of each year. The county viewed the usefulness of the 40 acres for grazing as a distinct tract, separate from the surrounding land, rather than considering the usefulness for grazing of the entire 400 acres that included the 40 acres. Viewing the 40 acres separately, the county stated in its "Conclusory Findings" that:

"The Board [of Commissioners of Jackson County] concludes that the quarry site is generally unsuitable for agricultural purposes because of the predominance of rock outcroppings, shallow soils, and unpalatable forage, severely reducing the potential for grazing. The Board recognizes that Section 218.060 requires a finding of general unsuitability rather than absolute unsuitability. While it can be argued that the site is suitable for grazing approximately one week of the year, this extremely short duration renders the site generally unsuitable."

The county granted the surface mining permit based in part on that finding.

On the other hand, on appeal, LUBA required that the "generally unsuitable land" criterion be applied to the 400-acre pasture tract taken as a whole. LUBA explained its different interpretation of the county ordinance as follows:

"[T]he standards of LDO 218.060(1), including the generally unsuitable standard of LDO 218.060(1)(D), are nearly identical to the standards required by statute to be applied to nonfarm dwellings. ORS 215.213(3); 215.283(3). The standards of ORS 215.213(3) and 215.283(3) were adopted by the legislature to make it difficult to approve nonfarm dwellings on EFU zoned lands. [Citations omitted.] ORS chapter 215 does not require that the standards of ORS 215.213(3) and 215.283(3) be applied to nonfarm uses other than nonfarm dwellings. By imposing the stringent nonfarm dwelling standards to *all* nonfarm uses allowed in the EFU zone, rather than to nonfarm dwellings only, the county regulates nonfarm uses in its EFU zone (other than nonfarm dwellings) more stringently than *required* by ORS chapter 215.

"* * * * *

"The county's findings and the evidence in the record are sufficient to demonstrate that the 40 acres, viewed by themselves, are generally unsuitable for grazing purposes. If the 40 acres were not part of a much larger area used for seasonal grazing, we would sustain the county's finding * * *. However, because it is (and historically has been) part of a 400 acre fenced seasonal grazing area and is of some value for grazing as part of that area, the 40 acres are not generally unsuitable for grazing purposes. Even lands with very limited value for agricultural use are not 'generally unsuitable for the production of farm crops and livestock,' within the meaning of ORS 215.213(3) and 215.283(3) and county regulations incorporating the language of those sections, where such lands are part of much larger agricultural operations which make it possible to make use of the limited resource value of the property. [Citations omitted.]" LUBA No. 90-004, (1990), 143-44, 147-48.[1]

It is apparent that LUBA's decision is predicated on rejection of the county's interpretation of the "generally unsuitable land" criterion and substitution of LUBA's own

---

[1] As will be noted later in the text of this opinion, LUBA overstates the case when it refers to LDO 218.060(1)(D) standards for nonconforming uses as "nearly identical to standards required by statute to be applied to nonfarm dwellings. ORS 215.213(3); 215.283(3)."

interpretation of the meaning of "generally unsuitable land" in the local ordinance, an interpretation founded on what LUBA perceived to be the legislative policy underlying enactment of the ordinance.

The difference between the two interpretations is, in turn, founded on a different understanding of what "tract" of "land" is referred to in the "generally unsuitable land" criterion of the local ordinance relating to certain non-dwelling conditional uses. Is the tract the 40 acres? Or is it the 400 acres taken as a whole so that it includes the 40 acres as an integral part of the 400 acres? In other words, may the land area, for which a surface mining conditional use permit is sought, be isolated from the surrounding land when the "generally unsuitable" criterion of the local nonconforming use ordinance is being applied?

■      Before turning to consideration of whether LUBA is legally permitted to make such a contrary interpretation of a local ordinance, we first consider the statutory standard under which the Court of Appeals and this court review an action of LUBA and the statutory standard under which LUBA reviews a local land use decision. Our standard of review is delineated by ORS 197.850(9).[2] On appeal, Jackson County and the Stanleys claim that the LUBA order is "unlawful in substance," in that LUBA misinterpreted and misapplied the pertinent county ordinance. That contention comes within our statutory scope of review. *See Byrd v. Stringer*, 295 Or 311, 666 P2d 1332 (1983) (LUBA order applying Goal standards instead of ordinances implementing acknowledged plan was unlawful in substance).

LUBA's authority to review a local land use decision is also derived from statute. ORS 197.835 provides in relevant part:

"(7)   In addition * * * the board shall reverse or remand the land use decision under review if the board finds:

"(a)   The local government or special district:

---

[2] ORS 197.850(9) provides in part:

"The court may affirm, reverse or remand the [LUBA] order. The court shall reverse or remand the order only if it finds:

"(a)   The order to be *unlawful in substance* or procedure * * *." (Emphasis added.)

"* * * * *

"(C) Made a decision not supported by substantial evidence in the whole record;

"(D) *Improperly construed the applicable law* * * *." (Emphasis added.)

Under ORS 197.835(7)(a)(D), LUBA is granted review authority over a county's interpretation of a local land use ordinance. If a county has construed an ordinance in a manner that clearly is contrary to the enacted language, LUBA acts within its scope of review in finding that the county improperly construed the applicable law. *See Yamhill County v. Ludwick*, 294 Or 778, 789, 663 P2d 398 (1983) (applying principle); *West Hills & Island Neighbors v. Multnomah Co.*, 68 Or App 782, 787, 683 P2d 1032 (1984) (affirming LUBA's conclusion that county's interpretation was contrary to language and intent of county ordinance).

In *Yamhill County v. Ludwick, supra,* the county granted conditional use permits and variances for dwellings in a forest zone. Aggrieved neighbors appealed to LUBA. LUBA determined that the tracts involved did not qualify for permits as "existing legal lots of record," as that term was used in the county ordinance, and the county disagreed. Affirming LUBA's interpretation of the phrase, this court wrote:

> "We do not know the 'legislative intent' of Yamhill County when it adopted ordinance 10.330 requiring that there be an 'existing legal lot of record' as a condition precedent to the granting of a conditional use permit on a tract of less than 40 acres in an F-40 zone. However, it seems logical that it had in mind some of the same things discussed by the Arizona court in [*Robinson v. Lintz*, 101 Ariz 448, 420 P2d 923, 927 (1966)]. It may have been concerned with the size of the lots and the layout of the roads. It may have had the foresight to attempt to prevent the very things that have come to pass as described in the roadmaster's report — platted roads with extremely adverse grades and platted lot lines difficult to locate on the ground. Surely it was the original desire of Yamhill County to resolve such problems on the plat and subdivision approval rather than at a later date on a hearing for a conditional use permit and a variance." 294 Or at 789.

■ As *Yamhill County v. Ludwick, supra,* indicates, LUBA may review the county's application of its own law for consistency with the intended purpose of the county law. *See Anderson v. Peden,* 284 Or 313, 318-20, 587 P2d 59 (1978) (where more than one interpretation is tenable, county may reasonably act on its view of what authority it meant to reserve in its ordinance).

These cases illustrate that, in reviewing a county's land use decision, LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy. LUBA lacks authority to substitute its own interpretation of the ordinance unless the county's interpretation was inconsistent with that ordinance, including its context.

LUBA, in its order denying the mining permit, relied on the similarity between the "generally unsuitable land" language in LDO 218.060(1)(D) and that in another local ordinance, LDO 218.120 (dealing with nonfarm dwellings), and in statutes regulating location of nonfarm dwellings in EFU zones. LUBA called the language "nearly identical to standards required by statute to be applied to nonfarm dwellings. ORS 215.213(3); 215.283(3)." However, this case has nothing to do with permitting or siting nonfarm dwellings in an EFU zone. LDO 218.060(1), which is not about nonfarm dwellings as are the statutes cited by LUBA, is distinguishable from the statutes to which LUBA compared it in several respects. Two notable ones are:

(1) ORS 215.213(3)(b) provides: "A lot or parcel shall *not* be considered unsuitable solely because of its size or location if it can reasonably be put to farm use in conjunction with other land." (Emphasis added.) No such language appears in LDO 218.060. It does appear, however, in the county ordinance dealing with nonfarm dwellings, LDO 218.120.

(2) LDO 218.060(1)(D) does not stop with a statement of the "generally unsuitable" criterion but, instead, adds a modifying clause, not found in either statute cited by LUBA as "nearly identical." The modifying clause provides that the conditional use may be located on EFU land upon

alternative findings by the county that do not require that the land be found generally unsuitable for agricultural purposes.

That alternative criterion in LDO 218.060(1)(D) provides that a conditional use may be approved if:

"[F]indings conclusively demonstrate that:

"(i)    The proposed use will result in a more efficient and effective use of the parcel in view of its value as a natural resource; or

"(ii)    No feasible alternative sites in the area exist which shall have less impact on agricultural land."

Those alternatives are not available under the nonfarm dwelling ordinance or statutes on which LUBA relied for its interpretation of LDO 218.060, namely LDO 218.120, ORS 215.213(3), and ORS 215.283(3). The additional language quoted, providing alternate grounds for approval of a conditional use in an EFU zone, indicates that LDO 218.060(1)(D) is not governed by LDO 218.120, relating exclusively to nonfarm dwellings and not containing any such additional language or alternate grounds.[3]

A separate county ordinance, tracking the statutes in ORS chapter 215, permits mining in an EFU zone. LDO 218.040, referred to in LDO 218.060, in part provides:

"The following uses are permitted if in conformance with Sections 218.020, 218.060, and other pertinent sections of this ordinance:

"* * * * *

___

[3] Unlike a companion case decided today, *Smith v. Clackamas County*, 313 Or 519, 836 P2d 716 (1992), this case is not about nonfarm dwellings; it is about surface mining expressly permitted by an acknowledged local ordinance and the statutes.

Uses permitted by ORS 215.213(2) include, as a permitted use in an EFU zone:

"(d)    Operations conducted for:

"* * * * *

"(B)    Mining of aggregate and other mineral and other subsurface resources subject to ORS 215.298[.]"

ORS 215.283(2) include as a permitted use:

"(b)    Operations conducted for:

"* * * * *

"(B)    Mining of aggregate and other mineral and other subsurface resources subject to ORS 215.298[.]"

"(2) Operations conducted * * * [for] mining, and processing of aggregate and other mineral resources or other subsurface resources."

We conclude our consideration of the context of the subsection of the ordinance in question by examining other requirements that must be met under LDO 218.060 before a proposed conditional use may be approved. That ordinance section additionally requires findings that the proposed use:

"A) Is compatible with farm uses described in subsection (2) of ORS 215.203 and *is consistent with the intent and purposes set forth in ORS 215.243*, as specified in Section 218.020; and,

"B) *Does not interfere with accepted farm practices*, as defined in paragraph (c) of subsection (2) of ORS 215.203, *on adjacent lands devoted to farm use*; and

"C) *Does not adversely alter the stability of the overall land use pattern of the area* * * *." (Emphasis added.)

The requirement that the proposed conditional use be consistent with the agricultural land use policy set out in ORS 215.243 deserves additional consideration. That statute emphasizes "[t]he preservation of a maximum amount of the limited supply of agricultural land * * * in large blocks" and provides that "[e]xclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land."[4]

The county's relevant ordinances, detailed above, are part of its acknowledged comprehensive plan. Both ORS

---

[4] ORS 215.243 provides in part:

"The Legislative Assembly finds and declares that:

"* * * * *

"(2) The preservation of a maximum amount of the limited supply of agricultural land is necessary to the conservation of the state's economic resources and the preservation of such land in large blocks is necessary in maintaining the agricultural economy of the state and for the assurance of adequate, healthful and nutritious food for the people of this state and nation.

"* * * * *

"(4) Exclusive farm use zoning as provided by law, substantially limits alternatives to the use of rural land and, with the importance of rural lands to the public, justifies incentives and privileges offered to encourage owners of rural lands to hold such lands in exclusive farm use zones."

215.213(2) and ORS 215.283(2) authorize a county to permit certain mining operations within an EFU zone.[5]

Jackson County's plan, which includes the local ordinance at issue in this case, was acknowledged under statutes that expressly envisage some mining permits in EFU zones. What ORS 215.213(2) and ORS 215.283(2) permit, albeit conditionally, cannot be absolutely prohibited by ORS 215.243. Rather, where possible, effect must be given to both statutory provisions. ORS 174.010. That can be done here by reading them together. Indeed, ORS 215.243 was part of the same legislation that enacted ORS 215.213(2), permitting surface mining in EFU zones, subject to ORS 215.298. Or Laws 1973, ch 503, §§ 1 and 4. The policy of ORS 215.243 can and does co-exist with the statewide policy of permitting, under appropriate conditions, recovery of certain mineral resources in an EFU zone. Under the county's acknowledged ordinance, it could properly find, as it did in this case, that a conditional use, lawfully authorized in an EFU zone, is permissible on land of extremely limited agricultural value.

We conclude that the county's application of the terms of its acknowledged ordinance is permissible, because it is not inconsistent with its language, read in context of the ordinance. We hold that LUBA exceeded its statutory scope of review by imposing on the county, and the county's acknowledged ordinance, an interpretation that LUBA preferred but which was contrary to the county's permissible interpretation.

The decision of the Court of Appeals is affirmed on different grounds. The order of LUBA is reversed and remanded to LUBA for further proceedings.

---

[5] County government planning and zoning of land was initially authorized by Oregon Laws 1947, chapter 537 and 558, for county areas and for zoning districts within unincorporated areas of a county, respectively. Express statutory authorization for "surface mining" as a permitted land use has existed since 1949. Or Laws 1949, ch 441. Successor provisions applicable in EFU zones are now found in both ORS 215.283(2)(b) and ORS 215.213(2)(d), subject to ORS 215.298 (permitting additional local government regulation). Further, the legislature since has established ancillary regulation of some surface mining in ORS 517.750 to 517.900; Jackson County regulates additionally in LDO 272.050.