Argued and submitted May 12, resubmitted July 20, decision of the Court of Appeals affirmed in part and reversed in part; remanded to the Land Use Board of Appeals with instructions July 21, 1994

Dorothy GAGE
and Ashcreek Neighborhood Association,
*Petitioners on Review,*

*v.*

CITY OF PORTLAND
and FP-35 Partners,
*Respondents on Review.*

(LUBA 93-030; CA A80355; SC S40976)

877 P2d 1187

Edward J. Sullivan, of Preston Thorgrimson Shidler Gates & Ellis, Portland, argued the cause and filed the petition for petitioners on review.

Peter A. Kasting, Portland, argued the cause for respondent City of Portland.

Jeff H. Bachrach, Portland, argued the cause for respondent FP-35 Partners.

Before Carson Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

GILLETTE, J.

## GILLETTE, J.

In *Clark v. Jackson County*, 313 Or 508, 515, 836 P2d 710 (1992), this court held that:

"[I]n reviewing a [local government's] land use decision, [the Land Use Board of Appeals (LUBA)] is to affirm the [local government's] interpretation of its own ordinance [that is part of an acknowledged comprehensive plan,] unless LUBA determines that the [local government's] interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy. LUBA lacks authority to substitute its own interpretation of the ordinance unless the [local government's] interpretation was inconsistent with that ordinance, including its context."

In this land use case, LUBA applied that deferential standard of review in affirming the interpretation of a city code provision by a city hearings officer. On judicial review, the Court of Appeals agreed with that aspect of LUBA's decision, stating that the deference required by *Clark* "extend[s] as fully to a final local decision made by a hearings officer as to one made by the governing body." *Gage v. City of Portland*, 123 Or App 269, 276, 860 P2d 282, *adhered to on reconsideration* 125 Or App 119, 866 P2d 466 (1993). We allowed review and now reverse that aspect of the Court of Appeals' decision.

In September 1984, the City of Portland approved a final development plan for the 35-unit Cedar Meadows Planned Unit Development (PUD) in southwest Portland. In November 1991, the developers filed an application for a minor amendment to the PUD, seeking to reduce the number of residential structures on the site from six to three and to make an accompanying change in the location of the structures.[1] The Bureau of Planning approved the amendment, and a city hearings officer upheld the Bureau's decision on appeal. Under the procedure applicable to such cases, the hearings officer's decision was the final local government action.[2]

---

[1] The total number of dwelling units within the structures was to remain the same.

[2] The decision on the amendment to the PUD in this case was subject to what the City of Portland refers to as its "Type II" review procedure. *See* Portland City Code ch 33.730 ("Quasi-Judicial Procedures"). Under that procedure, the decision of the hearings officer "is final and may not be appealed to another review body within

On appeal of the hearings officer's decision to LUBA, petitioners argued, among other things, that the hearings officer had failed to apply to the proposed PUD amendment certain relevant provisions of the Portland City Code (PCC). Those provisions — contained in PCC chapter 33.299 (Temporary Prohibition on the Disturbance of Forests) — prohibited, subject to certain exceptions, the cutting, damaging, or removing of vegetation in forests within certain areas of the city. LUBA agreed with petitioners that PCC chapter 33.299 was applicable to the proposed PUD amendment and that the city had failed to apply that ordinance to test the proposed amendment. Accordingly, LUBA remanded the decision on the amendment to the hearings officer so that the hearings officer could interpret and apply the city code provisions in the first instance.

On remand, the hearings officer concluded that the site of the PUD met the definition of "forest" in PCC section 33.299.020 and that the development of the PUD would require the cutting and removing of trees and other vegetation — activities generally prohibited by PCC section 33.299.030(C). The hearings officer further concluded, however, that the proposed amendment fell within PCC section 33.299.040(F), an exception to the general prohibition. Section 33.299.040(F) provided that, "[n]otwithstanding the general prohibition of Section 33.299.030 above, the following activities are allowed: * * * F. Any activity authorized by a land use decision accepted and recorded before the effective date of this ordinance."[3] The hearings officer reasoned:

"The area to be developed under the amended plan includes less of the forested area than under the originally approved PUD. Fewer trees will be removed and the structures have been consolidated to reduce the area to be disturbed. All the development activity that will disturb forest area [under the amended plan] was approved in that original approval."

Petitioners once again sought review of the hearings officer's decision by LUBA, this time arguing, among other things, that the hearings officer had construed PCC section

---

the City." *Id.* § 33.730.020(I)(10). Thus, in this case, the Portland City Council did not have any review authority over the decision of the hearings officer.

[3] The provisions of PCC chapter 33.299 took effect on January 1, 1991.

33.299.040(F) improperly. Petitioners contended that, contrary to the conclusion of the hearings officer, the exception in that section did not apply, because the approval of the PUD amendment was a "new land use decision authorizing new and distinct activities on the land." Petitioners also argued that the hearings officer was not "the governing, legislative and policy-making body of the city" and, therefore, the interpretation of the code provision by the hearings officer was entitled to "little or no deference" from LUBA under this court's decision in *Clark v. Jackson County, supra.*

LUBA rejected petitioners' arguments and affirmed the hearings officer's decision. In affirming the hearings officer's interpretation of PCC section 33.299.040(F), LUBA applied *Clark's* deferential standard of review. LUBA concluded that *Clark* was applicable because, "so long as the decision maker in question has authority to interpret local enactments, its interpretation becomes the interpretation of the local government, to which we are required to defer under *Clark.*"

Petitioners sought judicial review of LUBA's order in the Court of Appeals. Before that court, petitioners argued that LUBA's affirmance of the decision of the hearings officer was "unlawful in substance," ORS 197.850(9)(a), because, among other things, LUBA should not have deferred to the hearings officer's interpretation of PCC section 33.299.040(F).[4] The Court of Appeals rejected that argument, concluding, as previously noted, that *Clark* permits no distinction between an interpretation of a local ordinance by a hearings officer and an interpretation by the local governing body itself. The Court of Appeals then reversed and remanded LUBA's order on other grounds. *See supra* note 4. After the Court of Appeals adhered to its opinion on reconsideration,[5]

---

[4] Petitioners also argued that LUBA's order was unlawful in substance because LUBA did not remand the decision to the hearings officer for consideration of petitioners' argument that, under certain other provisions of the Portland City Code, the original PUD approval had expired prior to the approval of the amendment. The Court of Appeals agreed with that argument, reversed LUBA's order, and remanded with instructions to remand the decision to the city. *Gage v. City of Portland,* 123 Or App 269, 276, 860 P2d 282, *adhered to on reconsideration* 125 Or App 119, 866 P2d 466 (1993). That aspect of the Court of Appeals' decision is not before us.

[5] In an initial petition for review to this court, petitioners argued that the Court of Appeals had given more deference to the local interpretation than was required by

we allowed review to consider whether the deference required by this court's decision in *Clark* applies to an interpretation of a local ordinance by a hearings officer. For the reasons that follow, we conclude that it does not.

We begin our analysis by summarizing this court's decision in *Clark v. Jackson County, supra. Clark* was a land use case involving an application for a conditional use permit to mine shale on a 40-acre portion of a 400-acre tract of grazing land in Jackson County. A Jackson County ordinance provided that the proposed conditional use could be approved by the County only if the use was situated "upon generally unsuitable land for the production of farm crops and live-stock." The county board of commissioners found that the 40-acre area met that standard and granted the permit. On appeal, LUBA disagreed with the county. LUBA concluded that, despite its limited value as grazing land, the 40-acre area was not "generally unsuitable land for the production of farm crops and livestock" when viewed as part of the entire 400-acre tract.

On review, this court noted that LUBA's decision was "predicated on rejection of the county's interpretation of the 'generally unsuitable land' criterion and substitution of LUBA's own interpretation of the meaning of 'generally unsuitable land' in the local ordinance." *Clark v. Jackson County, supra*, 313 Or at 512-13. The court then turned to

---

*Clark v. Jackson County*, 313 Or 508, 515, 836 P2d 710 (1992), because the local interpretation was "inconsistent with the meaning and context of the local code provisions and with the state's land use scheme." The Court of Appeals allowed that petition as one for reconsideration, but rejected petitioners' arguments in a brief opinion, citing the court's opinion on reconsideration in another land use case, *Friends of the Metolius v. Jefferson County*, 125 Or App 122, 866 P2d 463 (1993), *rev den* 318 Or 582 (1994). In the *Friends of the Metolius* case, the Court of Appeals held that the statewide planning goals are not part of the "context" of acknowledged local legislation for purposes of the standard of review announced in *Clark*.

In their petition to this court following the Court of Appeals' opinion on reconsideration, petitioners again argued that the Court of Appeals had given more deference than required by *Clark*, in that the court had improperly narrowed the "context" of the local legislation. We need not address that argument, however, because — as discussed further below — we conclude that the deference required by *Clark* does not apply to an interpretation of a local ordinance by a hearings officer.

Petitioners also have raised an argument regarding the jurisdiction of the hearings officer to address the application of PCC chapter 33.299 to the PUD on the original remand from LUBA. The Court of Appeals rejected that argument without comment, and we decline to address that aspect of the Court of Appeals' decision further.

"consideration of whether LUBA is legally permitted to make such a contrary interpretation of a local ordinance." *Id.* at 513. The court pointed out that LUBA's authority to review a local land use decision is derived from statute and that the relevant statute requires LUBA to reverse or remand such a decision if LUBA finds that the local government "[i]mproperly construed the applicable law." ORS 197.835-(7)(a)(D). The court then proceeded to identify the boundaries of LUBA's authority, under that statutory standard of review, to substitute its own interpretation of a local ordinance for that of the local government:

> "Under ORS 197.835(7)(a)(D), LUBA is granted review authority over a county's interpretation of a local land use ordinance. If a county has construed an ordinance in a manner that clearly is contrary to the enacted language, LUBA acts within its scope of review in finding that the county improperly construed the applicable law. *See Yamhill County v. Ludwick*, 294 Or 778, 789, 663 P2d 398 (1983) (applying principle); *West Hills & Island Neighbors v. Multnomah Co.*, 68 Or App 782, 787, 683 P2d 1032 (1984) (affirming LUBA's conclusion that county's interpretation was contrary to language and intent of county ordinance).

> "* * * * *

> "As *Yamhill County v. Ludwick, supra,* indicates, LUBA may review the county's application of its own law for consistency with the intended purpose of the county law. *See Anderson v. Peden*, 284 Or 313, 318-20, 587 P2d 59 (1978) (where more than one interpretation is tenable, county may reasonably act on its view of what authority it meant to reserve in its ordinance).

> "These cases illustrate that, in reviewing a county's land use decision, LUBA is to affirm the county's interpretation of its own ordinance unless LUBA determines that the county's interpretation is inconsistent with express language of the ordinance or its apparent purpose or policy. LUBA lacks authority to substitute its own interpretation of the ordinance unless the county's interpretation was inconsistent with that ordinance, including its context."

*Clark v. Jackson County, supra,* 313 Or at 514-15.

■   In essence, then, this court's decision in *Clark* requires LUBA, in certain circumstances, to defer to a local government's interpretation of its own ordinance. The local

governmental body responsible for the interpretation of the ordinance in *Clark* was the governing body of the county that had enacted the ordinance; therefore, this court had no occasion to address whether such deference must be given to an interpretation of an ordinance by someone other than the governing body, *e.g.*, a hearings officer. The principles underlying this court's decision in *Clark*, discussed *infra*, however, support the conclusion that the deference required by that decision does not apply to the interpretation of a local ordinance by a hearings officer — when, as was true here, there was no appeal of the hearings officer's decision to the responsible political body.

The principles underlying *Clark* are perhaps best illustrated by an examination of several earlier cases involving deference to a local government's interpretation of its own enactments. In *Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 581 P2d 50 (1978), for instance, this court held that deference should be given to the interpretation of a county charter by the governing body of the county. There, the court stated that, although the courts themselves are "finally responsible [for interpreting the charter], * * * it is the Board [of Commissioners] itself, *composed as it is of popularly elected local officials directly accountable to their constituency* * * * that, in the first instance, should have the power and right to interpret local enactments." 282 Or at 599 (emphasis added). The court went on to hold that the Board's interpretation of the county charter "is entitled to some weight unless it is clearly contrary to the express language and intent of the Charter." *Id.* at 599-600.

In *Anderson v. Peden, supra*, the court applied the rule of deference stated in *Fifth Avenue Corp.* to an interpretation by Deschutes County of one of its own land use ordinances. The court noted that, where two interpretations of the ordinance are "tenable, * * * the county may reasonably act on its view of what authority it meant to reserve in its ordinance." 284 Or at 318. Thus, the court deferred to the county's interpretation of the ordinance in question, because the county could be assumed to have some understanding of what it had intended by the ambiguous language of that ordinance.

In *Bienz v. City of Dayton*, 29 Or App 761, 566 P2d 904, *rev den* (1977), the Court of Appeals identified a similar reason for deferring to a local government's interpretation of its own land use ordinance. There, the court wrote:

> "In administrative law we have generally held that it is the responsibility of the agency entrusted with the administration of a statute, rather than the courts, to fill the statutory interstices. * * * The same rule should apply in construing municipal ordinances. The city council is not only charged with administering the ordinance, *but is the legislative authority from which the ordinance originates and thus is in a superior position to discern legislative intent.* Here, we have an ambiguity in the ordinance. We defer to the city's resolution of that ambiguity where as here the city's construction is not contrary to the express terms of the ordinance."

29 Or App at 776-77 (emphasis added; citations omitted).

The Court of Appeals' analogy in *Bienz* to the administrative law context is an apt one, because some of the reasons for giving deference to an administrative agency's interpretation of a legal rule are identical to the reasons for giving deference to a local government's interpretation of its own ordinance. For example, in *Springfield Education Assn. v. School Dist.*, 290 Or 217, 227, 621 P2d 547 (1980), this court noted that judicial deference to an administrative agency's interpretation of a statutory term may be appropriate "if the agency was involved in the legislative process." *See also 1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 390, 752 P2d 271 (1988) (deference to an agency's interpretation of a legal rule "can be implied from a number of characteristics," including the fact that "the body interpreting the rule may have direct political authority from the affected community and be accountable to it").

Based on the foregoing authorities, it is apparent that there are two fundamental principles behind the rule of deference announced by this court in *Clark*. First, deference is due a local governing body's interpretation of its own ordinance, because that governing body is composed of the politically accountable representatives elected by the community affected by the ordinance. Second, and perhaps more

important, deference is due a local governing body's interpretation of its own ordinance, because that governing body is the legislative body responsible for enacting the ordinance and may be assumed to have a better understanding than LUBA or the courts of the intended meaning of the ordinance.

■ When this court's decision in *Clark* is viewed in the light of those fundamental principles, it becomes evident that the reasons for requiring deference to a local government's interpretation of its own ordinance do not apply when the interpretation is that of a hearings officer. As petitioners aptly pointed out in their arguments before LUBA, "a policy of interpretive deference to a city council or county commission when it is interpreting 'its own ordinance' has little meaning in the context of an interpretation by a hearings officer, a relatively independent administrative law judge without policy-making, legislative or enforcement authority." Because a hearings officer is not a member of the popularly elected governing body, such a person is neither politically accountable to the community nor an integral part of the legislative process by which local land use ordinances are enacted.[6] Accordingly, we hold that an interpretation of a local land use ordinance by a hearings officer is not subject to the deference required by this court's decision in *Clark*.[7]

It follows from the foregoing that LUBA's order in this case was "unlawful in substance," ORS 197.850(9)(a), because LUBA applied the *Clark* rule of deference to a set of circumstances not governed by the *Clark* rationale. Consequently, this matter must be remanded to LUBA, so that LUBA can determine in the first instance, and without according the deference required by *Clark*, whether the hearings officer "[i]mproperly construed the applicable law," *viz*, PCC section 33.299.040(F). If, on remand, LUBA's decision on that issue does not result in reversal of the hearings officer's decision, the matter must be remanded to the city, so

---

[6] As noted above, *see supra* note 2, defendant the Portland City Council did not retain any review authority over the decision of the hearings officer in this case.

[7] In 1993, the legislature enacted a statute that expressly addresses LUBA's review of "a local government's interpretation of its comprehensive plan and land use regulations" and that, for the most part, appears to codify this court's decision in *Clark*. Or Laws 1993, ch 792, § 43 (codified at ORS 197.829). That statute does not apply here, however, because it went into effect only after LUBA's review of the decision in this case.

that the city can address the expiration issue discussed in the Court of Appeals' opinion. *See supra* note 4.

The decision of the Court of Appeals is affirmed in part and reversed in part. The matter is remanded to the Land Use Board of Appeals with instructions.