Maralee SULLIVAN,
*Respondent,*

*v.*

CITY OF ASHLAND,
*Petitioner,*

*and*

Donald J. JOHNSON,
*Respondent.*

(94-034; CA A84870)

882 P2d 633

Paul Nolte argued the cause and filed the brief for petitioner.

Judith Uherbelau argued the cause for respondent Maralee Sullivan. With her on the brief was Howser & Munsell.

No appearance for respondent Donald J. Johnson.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Petitioner City of Ashland (city) seeks review of LUBA's remand of the city's determination of the "northern lot line" of certain property for purposes of the city's solar access ordinance. We reverse.

In 1993, respondent Sullivan's neighbor, Johnson, applied to the city for a permit to build a home on land south of Sullivan's property. In greatly simplified form, the Sullivan and Johnson properties, with the projected home site, were situated like this:

After the city's planning staff and planning commission approved Johnson's application, Sullivan appealed to the city council, arguing that the proposed structure did not conform to the setback requirements of Asland's land use ordinance (LUO), with particular reference to the ordinance's solar access chapter. Under Ashland's solar access provisions, structures are required to be set back relative, in part, to a northern lot line. Sullivan asserted, in particular, that the staff and planning commission had incorrectly identified line "BCD" in the above illustration, rather than line "EF," as the operative "northern lot line" and had, thus, erroneously deprived her of part of her southern solar access.

Two provisions of Ashland's solar access chapter were especially pertinent to Sullivan's argument. Ashland's LUO 18.70.010 provides:

"The purpose of the Solar Access Chapter is to provide protection of a reasonable amount of sunlight from shade from structures and vegetation whenever feasible to all parcels in the city to preserve the economic value of solar radiation falling on structures, investments in solar energy systems, and the options for future uses of solar energy."

LUO 18.70.020.D, which defines "northern lot line," reads as follows:

"Any lot line or lines less than forty-five (45) degrees southeast or southwest of a line drawn east-west *and intersecting the northernmost point of the lot.* If the northern lot line adjoins any unbuildable area (*e.g.*, street, alley, public right-of-way, parking lot, or common area) other than a required yard area, the northern lot line shall be that portion of the northerly edge of the unbuildable area which is due north from the actual northern edge of the applicant's property." (Emphasis supplied.)[1]

Before the city council, Sullivan did *not* argue that LUO 18.70.020.D was somehow ambiguous; *i.e.*, that its plain language could ever be interpreted in such a way that line "EF" could be a northern lot line. Instead, Sullivan argued that rote application of LUO 18.70.020.D in this case would, in her view, yield a result contradicting the policies expressed in LUO 18.70.010.[2] Consequently, she reasoned, the former should give way to the latter, and line "EF" should be designated as the northern lot line most consistent with the solar access chapter's policies.

The city council rejected Sullivan's arguments:

"We specifically find that the northern lot line, as defined in [LUO] 18.70.020 D, is that lot line at the northernmost point of the lot or line BD * * *. We find that there is only one such northern lot line, and that the Staff used that line in the

---

[1] The second sentence of LUO 18.70.020.D was immaterial to the city's consideration of the Johnson building permit application.

[2] As amplified below, under the plain language of LUO 18.70.020.D, line "BCD" must be the northern lot line for purposes of calculating the solar access. That, in turn, permits the Johnson home to be sited much closer to Sullivan's property than if line "EF" could somehow be treated as the referent for the solar access setback.

determination of the solar access calculations for the issuance of the building permit.

"* * * * *

"It makes more sense, opponents would argue, to use line EF in the above diagram. Again, we find that staff made a correct determination. * * * We interpret the ordinance to not allow any discretion in the determination of the northern lot line. Line EF or any other line than the one staff determined to be correct cannot be the northern lot line applying the clear and objective standards of the ordinance.

"* * * [T]he intent and purpose of the solar access chapter as expressed in section 18.70.010 does not amend the unambiguous provisions of that chapter. * * *

"* * * * *

"The calculation of solar setbacks in chapter 18.70 is subject to specific, clear, objective and unambiguous standards. The purpose sections of the various chapters of the Land Use Ordinance are not standards in and of themselves, rather they are guidelines to interpretation of the ordinance where the requirements of the ordinance are too general or unclear, subjective, ambiguous or vague. To the extent that it is not apparent that the purpose sections in the ordinance are guidelines only, we so make such interpretation of the ordinance. We find that the section followed by staff in determination of the northern lot line is not general, unclear, subjective, ambiguous or vague. If a reviewing body determines that such ambiguity or vagueness, etc. exists[,] then we specifically interpret the solar access ordinance in the manner the staff did."

On appeal, LUBA remanded, holding that the city's determination of the northern lot line lacked the "necessary interpretative findings." LUBA's remand turned on two premises. First, LUBA held that LUO 18.70.020.D is susceptible to an interpretation under which line "EF" could be a northern lot line:

"[A]s petitioner points out, line 'EF' could also be considered a northern lot line, under the above quoted definition. While the LUO 18.70.020.D definition recognizes there can be more than one northern lot line on any given piece of property, the challenged decision simply contains a conclusory statement that 'there is only one such northern lot line [referring to line BD].' "

Second, given that "ambiguity," the city was obliged to interpret LUO 18.70.020.D by reference to the general purposes of the solar access ordinance, as set out in LUO 18.70.010:

> "Because it is unclear what lines constitute the northern lot line under LUO 18.70.020.D, it is appropriate to look to the purposes of the solar access ordinance * * *.
>
> "* * * * *
>
> "Clearly, the purpose of the solar access ordinance is to protect solar access. The solar access setbacks are designed to protect a lot's southern exposure by requiring setbacks from northern lot lines. In view of this purpose for the city solar access ordinance and the ambiguous language of LUO 18.70.020.D, we remand the challenged decision for the city to supply the necessary interpretative findings. The city must either explain why it does not consider line EF to be a northern lot line or recalculate the subject property's northern lot lines to include line EF. * * *"

Both of LUBA's premises were wrong. There is no "possible, rational" application of LUO 18.070.020.D by which line "EF" could be a northern lot line. *See Gage v. City of Portland*, 123 Or App 269, 275, 860 P2d 282, *on recon* 125 Or App 119, 866 P2d 466 (1993), *aff'd in part, rev'd in part on other grounds* 319 Or 308, 877 P2d 1187 (1994).[3] This is a matter of simple and inalterable geometry. LUO 18.70.020.D requires that a northern lot line intersect "the northernmost point of the lot" at an angle of 45 degrees or less. As the city found, line "EF" does not intersect the northernmost point of Johnson's property *at all*. Only line "BCD" satisfies that express definitional requirement.

Nor, as Sullivan contends, does the asserted inconsistency between the application of LUO 18.70.020.D and the general purpose provision, LUO 18.70.010, require a remand. As described above, the city has interpreted LUO 18.70.010 as being merely precatory. We defer to that interpretation, which is not contrary to the provision's express language or

---

[3] Indeed, at oral argument before this court, Sullivan's counsel acknowledged that, notwithstanding LUBA's suggestion to the contrary, Sullivan made no such argument below.

apparent purposes or policy. ORS 197.829; *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992).[4]

■ LUO 18.70.020.D was not arguably ambiguous as applied to the facts in this case. Line EF simply does not intersect the northernmost point of the lot. Accordingly, the city was not obliged to render interpretive findings. *See Gage v. City of Portland, supra,* 123 Or App at 274-75. *Accord Weeks v. City of Tillamook,* 117 Or App 449, 844 P2d 914 (1992). LUBA erred in remanding for such findings.

We turn to Sullivan's cross-assignments of error. Sullivan first argues that the city erroneously interpreted the definition of "lot" in LUO 18.08.350[5] to include that part of the Johnson property located outside the city. We reject this cross-assignment, because we agree with LUBA that the city's interpretation passes muster under ORS 197.829. Sullivan also argues that the city's approval of the building permit was not supported by substantial evidence in several particulars. Because LUBA did not reach and initially consider those arguments, we remand for it to do so.

Reversed and remanded.

---

[4] In discussing LUO 18.70.010, LUBA did not mention, much less assess, the city's interpretation of that provision.

[5] LUO 18.08.350 defines a "lot" as a

"unit of land created by a partition or subdivision, or a unit or contiguous units of land under single ownership, which complies with all applicable laws at the time such lots were created."