Argued and submitted June 11, affirmed July 15, 1998

## TRADEMARK CONSTRUCTION, INC.,
*Petitioner,*

*v.*

## MARION COUNTY BOARD OF COMMISSIONERS,
John Frederic and Sandra Edwards,
*Respondents.*

(97-188; CA A101689)

962 P2d 772

Donald M. Kelley argued the cause for petitioner. With him on the briefs were Patrick E. Doyle and Kelley & Kelley.

Jane Ellen Stonecipher, Assistant Legal Counsel, argued the cause for respondent Marion County Board of Commissioners. With her on the joint brief were Michael J. Hansen, Marion County Legal Counsel and David Doyle. David Doyle argued the cause for respondents John Frederic and Sandra Edwards.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DE MUNIZ, P. J.

## DE MUNIZ, P. J.

Petitioner seeks review of LUBA's decision affirming the dismissal by the Marion County governing body of petitioner's application for a conditional use permit to expand its present aggregate quarry operation. We affirm.

The proposed expanded operation is located inside the Urban Growth Boundary (UGB) of the City of Stayton but outside the city limits. The proposal would increase the area of the aggregate operation from one to 19 acres, would increase extraction levels from 1,000 to 100,000 cubic yards per year, and would introduce new or more intense blasting, crushing, and other extraction methods. Under a 1989 intergovernmental agreement between the city and the county, county decisions pertaining to unincorporated areas within the Stayton UGB "shall be consistent with the City's comprehensive plan [.]" Although the question of which version of the city's plan is applicable was a disputed question before LUBA, it held and the parties now agree that the county was correct in applying the Stayton Comprehensive Plan that was adopted by the city in 1980. In 1982, the *county* governing body also adopted the 1980 *city* plan as part of the county's own land use legislation applicable to uses in unincorporated areas that are inside Stayton's UGB.

The plan contains the following provisions, *inter alia*, relating to the existing quarry site:

"The site is intrusive with a platy structure. The material fractures very easily and can be removed and stockpiled or loaded without the necessity of blasting or crushing. An estimate of 1.5 million cubic yards of material is reported to exist at the site.

"[The owner] currently operates the site on an intermittent basis for emergency repair of slides, washouts, and other maintenance problems.

"The rock removal at this site should be limited due to the proximity to residential areas. The current use activities could be considered to be compatible, at its present level, with the surrounding area for some time to come."

In its order on petitioner's application, the county governing body adopted the findings and conclusions of a hearings officer, who interpreted the quoted provisions as

"[showing] that rock extraction on the site was intended to be kept at a much lower level than proposed by applicant, and that blasting, crushing and washing are not to be allowed."

In addition to relying on the plan language itself, the county's decision also treated the intergovernmental agreement's requirement of consistency with the plan as a "mandatory approval standard." The county concluded that the proposed expansion did not satisfy the plan, that a plan amendment would be necessary in order for the proposal to comply, that the county had no authority to amend the city's plan, and, consequently, that the county lacked jurisdiction over the further processing of the permit application.

Petitioner appealed to LUBA, asserting that the county erred in the foregoing conclusions and others. Initially, LUBA agreed with petitioner that, insofar as the relevant legislation consisted of provisions of the city's comprehensive plan, the county governing body's interpretations of them was not subject to the deferential review standard of ORS 197.829, *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), and *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994). Nevertheless, LUBA proceeded to interpret the provisions independently in largely the same way that the county had, and it affirmed the county's decision.

Petitioner now seeks our review. The county cross-assigns error to LUBA's determination that the *Clark* standard does not apply to the county governing body's interpretations of the Stayton Comprehensive Plan provisions. Because the resolution of the cross-assignment dictates the method by which we review most of petitioner's arguments, we turn to it first.

In *Gage*, the Supreme Court concluded that the deferential review principle that it had announced in *Clark* did not apply to the city hearings officer's interpretation that was under consideration. Rather, it applied only to a governing body's interpretation of local legislation. The court explained:

"[I]t is apparent that there are two fundamental principles behind the rule of deference announced by this court in *Clark*. First, deference is due a local governing body's interpretation of its own ordinance, because that governing body is composed of the politically accountable representatives elected by the community affected by the ordinance. Second, and perhaps more important, deference is due a local governing body's interpretation of its own ordinance, because that governing body is the legislative body responsible for enacting the ordinance and may be assumed to have a better understanding than LUBA or the courts of the intended meaning of the ordinance." *Gage*, 319 Or at 316-17.

In this case, LUBA analogized the county governing body's role, *vis-a-vis* the Stayton Comprehensive Plan, to that of a city hearings officer. The county disagrees. It argues that its governing body is elected and politically accountable, and that it enacted the provisions in question *as part of the county's own comprehensive plan*. Hence, notwithstanding the city's earlier enactment of the identical provisions, the county reasons that its governing body stands in a relationship to the provisions that is of the kind that *Gage* delineates.

■    The county appears to us to be correct. It is undoubtedly true, as petitioner suggests, that the Marion County governing body that acted on this application had no greater knowledge than LUBA or this court might have about what the Stayton City Council "intended" when it enacted the language in question in 1980. However, under *Gage*, the relevant question is not what the Stayton City Council meant but what the Marion County Board of Commissioners meant when it adopted Stayton's language as part of the county's own comprehensive plan.

The point might also be made that the county commissioners who ruled on the present application had no more special insights into what *their* predecessors meant in 1982 than about what their counterparts in Stayton meant two years earlier. Indeed, petitioner points to an exchange among the members of the Marion County Board, in the proceedings on its application, which petitioner regards as showing reluctance or uncertainty about various interpretive questions. Be

that as it may, the county governing body *did* adopt the interpretations of the county hearings officer who acted on the application, to the effects indicated above, and those interpretations are imputable to the governing body. *Derry v. Douglas County*, 132 Or App 386, 888 P2d 588 (1995). Whether the governing body *in fact* has any peculiar knowledge about the meaning of the legislation it interprets is not relevant; its presumptive knowledge is a fiction that constitutes part of the Supreme Court's rationale for a rule of law.

Summarily stated, it is immaterial that the provisions duplicate those that the Stayton governing body enacted earlier as part of the city's plan. For purposes of this case, they are part of the county's comprehensive plan, and they were enacted as such by the county's governing body. Accordingly, we conclude that the *Clark / Gage* rules apply to the county interpretations here. We therefore review them under the "clearly wrong" standard articulated in our cases that implement *Clark. See, e.g., Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 843 P2d 992 (1992). Because LUBA concluded that the *Clark* standard was not applicable, and rendered its own interpretations of the local legislation, petitioner's principal arguments are directed at LUBA's rather than the county's reasoning. Nevertheless, petitioner's arguments present questions of law that we are in as good a position as LUBA to answer. *See Reusser v. Washington County*, 122 Or App 33, 857 P2d 182, *rev den* 318 Or 60 (1993). A remand to LUBA would serve no purpose.

Most of petitioner's arguments that require discussion appear in its first assignment. It contends that the Stayton Comprehensive Plan provisions on which the county based its decision are not "approval standards," but are instead merely "aspirational." Further, petitioner argues, insofar as the county relied on the requirement of consistency with the plan in the intergovernmental agreement, that document cannot convert the plan provisions into the approval standards that those provisions themselves do not purport to be. Petitioner relies for the latter argument on *Bennett v. City of Dallas*, 96 Or App 645, 773 P2d 1340 (1989).

■■ Petitioner's contention that the plan provisions are not approval criteria is two-pronged. First, it maintains that the provisions relating to the quarry site itself are not approval standards. Petitioner engages in a paragraph-by-paragraph analysis of the provisions, culminating in its assertion that the provisions ultimately provide that the use "should be limited" rather than that it "shall be limited." We do not agree that the county could not reasonably interpret the word "should" to have more than the totally "advisory" meaning that petitioner assigns to it, or that the county was clearly wrong in reading the provisions in their entirety as foreclosing a 20-fold expansion in the area and a 100-fold increase in the volume of the quarry operations.

■ Petitioner's second theme is that the *entire* Stayton Comprehensive Plan is "non-mandatory" in nature, because it contains the introductory language recited in note 1.[1] Petitioner reasons that the recurring use of the word "guide" in that language denotes that the "plan itself states that it is not intended as a source of decisional criteria." The county responds:

> "The use of the term 'guide' describes the purpose of all comprehensive plans; they provide the broad strokes, which are then filled in by zoning ordinances. Petitioner cites nothing in the comprehensive plan that specifically describes it as an advisory document."

Petitioner relies on *Downtown Comm. Assoc. v. City of Portland*, 80 Or App 336, 722 P2d 1258, *rev den* 302 Or 86

---

[1] The Stayton Comprehensive Plan states:

"The purpose of this document is to establish a guide for the growth and development of the Stayton community. The plans and policies contained in this document are, in effect, an adopted statement of public policy which will serve, not only as a guide in the decision-making process, but also to communicate an understanding of the community's growth policies to the general public, other agencies, and the private landowner.

"* * * It is important to understand that because this plan is intended to serve as a guide to future development, more specific actions and programs must be undertaken to implement the goals and plans. A distinction between the comprehensive plan and implementing measures such as zoning, subdivision codes, public land acquisitions, taxing policies, and public improvements must be understood. Implementing measures are specific and separate actions. The plan is not a zoning ordinance, but a guide to future development."

(1986), where we held that a policy component of the Portland Plan was "advisory" rather than "mandatory," in part because it and other city legislation described and treated it as a "guide" or "guideline only." *Id.* at 339. The situation here differs. Neither the language of the plan itself nor any extrinsic data of the kind that were present in *Downtown Comm. Assoc.* are to the effect that the Stayton Comprehensive Plan or any part of it serves an *exclusively* advisory function. Rather, as the county argues, the language of the plan introduction simply delineates the usual relationship between comprehensive plans and local implementing legislation. The fact that the plan is more general than zoning legislation and serves as a guide for the substance of that legislation does not mean that *nothing* in the plan is mandatory. We did not say anything in *Downtown Comm. Assoc.*—nor have we in any other case—that lends support for the proposition that a comprehensive plan is or can be precatory in its entirety.

We conclude that the specific provisions of the Stayton Plan on which the county relied constitute approval criteria that are applicable to the proposed expanded use and that the county's interpretation of the provisions survives scrutiny under the *Clark* standard. Given our conclusion that the plan provisions are approval standards, standing alone, it is unnecessary for us to reach petitioner's argument that the provisions cannot be elevated into approval standards by the requirement in the intergovernmental agreement that the county's actions must be consistent with the plan.[2] We reject petitioner's first assignment.

To the extent that petitioner's remaining assignments are not dependent on or do not fail for the same reasons as its first assignment, we have considered them and conclude that they do not warrant separate discussion.

Affirmed.

---

[2] We note, however, that petitioner overreads *Bennett v. City of Dallas*, 96 Or App 645, 773 P2d 1340 (1989), in ways that resemble its understanding of *Downtown Comm. Assoc. v. City of Portland*, 80 Or App 336, 722 P2d 1258, *rev den* 302 Or 86 (1986). *Bennett* addresses its own facts and does not state a universal principle that comprehensive plan provisions cannot be identified or interpreted as approval standards in a different instrument. Indeed, we stated the opposite of that principle in *Downtown Comm. Assoc.* itself. *Id.* at 339 n 4.