Argued and submitted October 17, 1983, affirmed April 18, 1984

# AUDUBON SOCIETY OF PORTLAND et al,
*Respondents,*

*v.*

# OREGON DEPARTMENT OF FISH
# AND WILDLIFE et al,
*Petitioners.*

681 P2d 135

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for petitioners. With her on the brief were Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy

Attorney General, and William F. Gary, Solicitor General, Salem.

Terry D. Morgan, Lake Oswego, argued the cause for respondents. With him on the brief was Morgan & Shonkwiler, P.C., Lake Oswego.

Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, William F. Gary, Solicitor General, and Mary J. Deits, Assistant Attorney General, Salem, filed a brief amicus curiae on behalf of Division of State Lands and Department of Agriculture.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

### YOUNG, J.

Petitioners appeal from an order of the Land Use Board of Appeals (LUBA) remanding an order of the Oregon Fish and Wildlife Commission (Commission)[1] that granted intervenors[2] a permit to spray a carbaryl pesticide (Sevin)[3] on inter-tidal lands of Tillamook Bay which are used by intervenors for oyster cultivation. The permit was issued in an attempt to control mud and ghost shrimp populations, which are inimical to oyster cultivation. LUBA held that the commission failed to comply with Goal 16[4] in issuing the permit. We affirm.

The crux of LUBA's order is that "the commission has neither generated enough facts nor made sufficient findings to comply with various Goal 16 provisions, * * * such as a proper inventory * * *." LUBA concluded that Goal 16's inventory requirement was not met, because "there was a lack of findings addressing the questions about what organisms exist in the target [spray] area as well as the whole Tillamook Bay estuary," the effect that application of Sevin would have on those organisms and, if there is an effect, the impact that it would have on the estuary ecosystem as a whole. In the light of the goal's mandate that "[e]stuary plans and activities shall protect the estuarine ecosystem, including its natural biological productivity, habitat, diversity, unique features and water quality * * *,"[5] LUBA held that the commission failed to

---

[1] This is the second time the permit has been contested. The first case was on judicial review of the Commission's allowance of the permit. *See Oregon Shores v. Oregon Fish and Wildlife,* 62 Or App 481, 662 P2d 356 (1983).

[2] Intervenors are the Oyster Growers, who did not file a brief.

[3] According to the commission's findings, Sevin is a non-specific pesticide which is toxic at low concentrations to a number of organisms.

[4] LUBA applied the Goal because the county had not completed the planning process for the Tillamook Bay estuary in preparing its comprehensive plan.

[5] Goal 16 does recognize that there are legitimate estuarine management objectives other than simply the preservation of the status quo. However, the goal states that "reduction or degradation of these natural values by man shall be allowed only:

"(1) if required for navigation or other water-dependent uses that require an estuarine location; and

"(2) *if a public need is demonstrated; and*

"(3) if no alternative upland locations exist; and

"(4) if adverse impacts are minimized as much as feasible."

The goal also provides that "[u]ses which maintain the integrity of the estuarine system * * *" are to be given the highest priority in estuarine management decisions.

comply with the Goal. Simply put, LUBA concluded that the commission could not protect the estuary or assure minimum adverse affects from the pesticide without determining what organisms live in the estuary and whether the pesticide would adversely affect those organisms.

Petitioners' contention is that the commission met the requirements of the goal. Specifically, they argue that the commission is not required to make a complete inventory of an estuary's ecosystem before issuing a permit for the use of a non-specific pesticide. They urge that the commission is only required to make an "impact assessment" and that the impact asssessment made in this case provided the commission with sufficient information to apply the goal. We disagree.

■ We note first that LUBA's decision regarding the adequacy of the information upon which the commission issued the permit does not, as petitioners contend, substitute LUBA's judgment for that of the commission on a question of fact. LUBA's judgment was not that the facts found by the commission were unsupported by substantial evidence, but that the facts found did not provide sufficient information to assure compliance with the goal. Goal 16's requirements provide the legal standard against which LUBA reviewed the commission's action. When LUBA found that the commission "has improperly applied Statewide Goal 16," it was holding that the commission "[i]mproperly construed the applicable law * * *." Or Laws 1981, ch 748, § 5(4)(a)(D) (now ORS 197.835(8)(a)(B)). Goal 16 requires, *inter alia,* that "[s]tate agencies with planning, permit, or review authorities affected by this goal shall review their procedures and standards to assure that the objectives and requirements of the goal are fully addressed."

■ The commission is a state agency. ORS 496.138; ORS 183.310(1). It has permit authority. ORS 509.140. That authority is affected by the Statewide Planning Goals. ORS 197.180(1). It follows that the commission is required to conform its procedures and standards for issuing permits to the requirements of Goal 16 to assure that the objectives and requirements of the goal are fully addressed. Thus petitioners' argument that it need not meet the Goal's inventory requirement is without merit.

■ Goal 16 sets out "Inventory Requirements":

> "Inventories shall be conducted to provide information necessary for designating estuary uses and policies. These inventories shall provide information on the nature, location, and extent of physical, biological, social and economic resources in sufficient detail to establish a sound basis for estuarine management and to enable the identification of areas for preservation and areas of exceptional potential for development."

The objective of the requirement is spelled out in the requirement itself— "to provide information necessary for designating estuary uses and policy * * * in sufficient detail to establish a sound basis for estuarine management * * *." The goal also sets out a guideline for meeting the inventory requirement. The guideline is advisory, not mandatory, but it suggests an approach designed to aid agencies and others to comply with the Goal. ORS 197.015(9). It suggests that the inventory should be "*[i]n detail appropriate* to the level of development or alteration proposed * * *." (Emphasis supplied.)

Considering the objective of the inventory requirement and the guideline, we cannot agree with petitioners that the inventory requirement imposes an impossible burden on a state agency's ability to carry out its statutory obligations in the permitting process. Agency compliance with Statewide Planning Goals is itself a statutory obligation, not a rule imposed on agencies by LUBA or by this court. ORS 197.180. Furthermore, nothing in LUBA's order, or in Goal 16, suggests that a complete inventory must be made each time an agency makes a permit decision. What is required is that agencies make inventories "in sufficient detail to establish a sound basis for estuarine management." One way an agency can insure that it meets that requirement is to make an inventory "in detail appropriate to the level of development or alteration proposed." The bottom line is that, if no inventory has been completed during the local government's comprehensive planning, an agency proposing to permit activities which may have an impact on the estuary must make an inventory in sufficient detail to demonstrate that the proposed activity will be consistent with the requirements of Goal 16.

In this case the commission proposed to allow a non-specific and highly toxic pesticide to be applied at low tide on inter-tidal lands within an estuary. There was one finding of

fact that addressed the impact of this proposed alteration[6] in the estuary on non-target life forms and the estuary's ecosystem as a whole:

"Populations of organisms which are affected by Sevin will regenerate rapidly. Studies by the Washington Department of Fisheries indicate that little, if any differences existed in the number of invertebrates on ground not treated and on ground that was treated a few years earlier."

LUBA held:

"That finding is not sufficient in light of the testimony and lack of findings addressing the questions about what organisms exist in the target areas as well as the whole Tillamook Bay estuary. There is no indication in the findings whether equivalent tidal actions and life forms exist in the areas in Washington where the studies were done. In addition, there is no indication that a 'few years' is satisfactory information to base a decision upon given the affect of Sevin on non-target life forms." 7 Or LUBA at 179.

We agree with LUBA that the commission's finding does not support the conclusion that the pesticide would have minimum adverse effects and that the estuarine ecosystem would be protected. Because Goal 16 requires those conclusions, the commission should not have issued the permit.

■■    In addition to the inventory requirements of Goal 16, impact assessments are required in certain circumstances:

"Unless fully addressed during the development and adoption of comprehensive plans, actions which would potentially alter the integrity of the estuarine ecosystem shall be preceded by a clear presentation of the impacts of the proposed alteration, and a demonstration of the public's need and gain which warrant such modification or loss. * * *"

An impact assessment is further described in the guidelines.

"The impact assessment required in the goal should be applied at the time of planned development, for alterations projected or identified in the plan, or at the time of permit review and approval for actions not identified in the plan.

---

[6] We note that determining what the "proposed alteration" would be is itself a difficult problem when, as here, an inventory sufficient to determine the status quo has not been made.

"The impact assessment should not be lengthy or complex, but it should enable reviewers to gain a clear understanding of the impacts to be expected. * * *"

Reading Goal 16 as a whole, it is apparent that an impact assessment must be preceded by an adequate inventory. Only then could the impact of a proposed alteration be determined and there be a basis for significant review and approval for actions not fully addressed during the planning process.

Petitioners argue that the commission's impact assessment satisfies its duty under Goal 16. We disagree for the reasons stated above. However, we do not suggest that the commission's findings are inadequate because they are contained in an "impact assessment" rather than an "inventory." The test is simply whether the agency has demonstrated sufficient information in its findings of fact and conclusions of law to justify the conclusion that the proposed activity meets the requirements of the goal. In this case it has not.[7]

Affirmed.

---

[7] The Commission also asks that we decide certain issues relating to the "management unit classification" given the treatment area by the Commission. LUBA concluded that it was impossible to resolve those issues on the record before it. That conclusion was not assigned as error. In the light of our scope of review of LUBA orders, we decline to address those issues. Or Laws 1981, ch 748, § 6a(8) (now ORS 197.850(9)).