Argued and submitted August 1, affirmed September 10, 1997

## Joel GISLER,
*Petitioner,*

*v.*

## DESCHUTES COUNTY,
*Respondent.*

## (LUBA No. 96-164; CA A98218)

945 P2d 1051

Jack K. Sterne argued the cause for petitioner. With him on the brief was Dan Van Vactor.

Bruce W. White, Assistant Legal Counsel, filed the brief for respondent.

Before De Muniz, Presiding Judge, and Deits, Chief Judge, and Haselton, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner seeks review of LUBA's affirmance of a Deschutes County hearings officer's denial of petitioner's application for a subdivision. We affirm.

The proposed subdivision is located in a suburban low-density residential zone and is outside the urban growth boundary (UGB). Section 19.20.055(A)(4) of the Deschutes Development Code requires that, for subdivisions and other developments or partitions of two lots or more in that zone:

"All new lots shall be connected to a Department of Environmental Quality-permitted community or municipal sewer system."

The county code requires further that "[c]onnection of the lots to sewer[s] shall be a condition of tentative plat approval." Petitioner's proposed development is not connected to an existing sewer system, and there is no existing city or community sewer system that is located or has facilities outside the UGB and that is near the subdivision site. Petitioner does not contend that the proposed subdivision can comply with section 19.20.055(A)(4). Rather, his position is that it does not have to and that his application proposing separate septic systems for each of the subdivision lots instead of connections to a sewer system is acceptable.

We will discuss petitioner's argument in detail below. Its essential point is that he cannot be required to comply with section 19.20.055(A)(4) because, in his view, that county provision conflicts with and is "invalidated" by the following language that was added to statewide planning Goal 11 in 1994:

"Counties shall not allow the establishment of new sewer systems outside urban growth boundaries or unincorporated community boundaries, or allow new extensions of sewer lines from within urban growth boundaries or unincorporated community boundaries to land outside those boundaries."

ORS 197.646 provides, as relevant:

"(1)  A local government shall amend the comprehensive plan and land use regulations to implement new or

amended statewide planning goals, commission administrative rules and land use statutes when such goals, rules or statutes become applicable to the jurisdiction. Any amendment to incorporate a goal, rule or statute change shall be submitted to the department as set forth in ORS 197.610 to 197.625.

"* * * * *

"(3) When a local government does not adopt comprehensive plan or land use regulation amendments as required by subsection (1) of this section, the new or amended goal, rule or statute shall be directly applicable to the local government's land use decisions."

■     As of the time that petitioner filed his application or, insofar as we are advised, at any time since, the county had not adopted plan and regulatory amendments to implement the 1994 amendment to Goal 11. Consequently, the goal amendment applies directly to the county's land use decisions, including the decision that petitioner challenges here. *See Dept. of Land Conservation v. Lincoln County*, 144 Or App 9, 925 P2d 135 (1996), *rev den* 324 Or 560 (1997).

■     Petitioner argued to the county and LUBA and, in his first assignment of error, now argues to us, that section 19.20.055(A)(4), at least as applied to proposed developments outside the UGB, is contrary to the amended goal. *See* note 2. According to petitioner, the county provision requires exactly what Goal 11 forbids. Petitioner explains:

"Goal 11 clearly does prohibit counties from requiring urban services, such as sewer systems, in lands outside UGBs.

"* * * * *

"[Section] 19.20.055(A)(4) requires subdivisions in the * * * zone to have sewer systems. The only way for such subdivisions to have sewer systems is either to build a new sewer system or to extend an existing sewer connection from within the UGB to land outside the UGB. Both of these options are prohibited under Goal 11 as amended. Thus, Goal 11 invalidates Deschutes County's requirement that lands outside the UGB must have sewer before they can be approved for development."

Petitioner continues that, given the asserted invalidity of the sewer requirement in section 19.20.055(A)(4), his proposed subdivision can be approved with individual septic systems on the individual lots instead of the sewer connections that the purportedly invalid provision requires. Petitioner relies on another provision of the county code, which allows "individual disposal systems" in the zone under certain circumstances. Petitioner does not contend that that other provision would be applicable here, or would authorize individual disposal systems on subdivision lots, if section 19.20.055(A)(4) and its express requirement of sewer system connections *is* valid and can therefore be applied here.

The county hearings officer and LUBA disagreed with petitioner's argument concerning the invalidity of section 19.20.055(A)(4).[1] LUBA explained:

"There is nothing in the language of Goal 11 to support petitioner's argument that the goal requires the county to allow subdivisions outside the UGB to be connected to individual septic systems. Likewise, there is nothing in the goal that prohibits the county from requiring such subdivisions to be connected to a sewer system. *The goal does not prohibit the establishment of sewer systems outside the UGB*. Rather, it prohibits what petitioner proposes here: extending sewer systems from within the UGB to areas outside the UGB. Goal 11 does not invalidate [section] 19.20.055(A)(4) or otherwise preclude the county from applying that provision to petitioner's application." (Emphasis supplied.)

■ Petitioner contends that the emphasized language in that passage from LUBA's opinion is contrary to Goal 11. We

---

[1] Petitioner sought review of the hearings officer's decision by the county governing body, but it declined to hear the discretionary appeal. In its brief to us, the county concurs in petitioner's arguments and explains that, after the local decision was final, the governing body "voted two to one to support [petitioner's] position before" this court.

We emphasize that the local land use decision in this case is that of the hearings officer and that the governing body's subsequent action is neither a land use decision nor a local interpretation of local land use legislation to which ORS 197.829 or *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), applies. Accordingly, the interpretation of the local legislation that is involved here is not subject to the deferential review standard of that statute and case. *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994); *see also West v. Clackamas County*, 116 Or App 89, 92, 840 P2d 1354 (1992).

agree. The amendment to the goal expressly prohibits counties, *inter alia*, from permitting the establishment of new sewer systems on land outside UGBs. However, insofar as petitioner suggests that this incorrect statement by LUBA in its opinion can warrant reversal in itself, we disagree. The dispositive issues that are presented to us are matters of law, and we may resolve those issues on review. Whether or not LUBA's reasoning was correct in all of its particulars is not decisive. *See Holland v. City of Cannon Beach*, 323 Or 148, 915 P2d 407 (1996); *Reusser v. Washington County*, 122 Or App 33, 857 P2d 182, *rev den* 318 Or 60 (1993).[2]

Petitioner casts his argument in terms that are usually associated with preemption analysis, *e.g.*, that section 19.20.055(A)(4) is "invalidated" because of its inconsistency with the amendment to Goal 11. Although the practical difference as applied to the question here is minimal or nonexistent, we do not think that that characterization is precisely correct. Under ORS 197.175(2)(c) and (d), a local government whose comprehensive plan and land use regulations have not been acknowledged as complying with the statewide planning goals must make land use decisions "in compliance with the goals"; but after the local government's legislation has been acknowledged, as the county's has, its land use decisions are to be made in compliance with its acknowledged plan and regulations, and the goals cease to apply to the decisions directly. *See Friends of Neabeack Hill v. City of Philomath*, 139 Or App 39, 46, 911 P2d 350, *rev den* 323 Or 136 (1996), and authorities there cited. In circumstances where ORS 197.646 is applicable, however, the locality must directly apply an amended goal to its land use decisions, until such time as it has adopted amended legislation that implements the amended goal. However, that does not mean that it cannot or need not also apply its existing acknowledged land use provisions to its decisions, insofar as they are consistent with the amended goal.

---

[2] Petitioner's argument under his first assignment here is directed almost entirely to the misstatement in LUBA's opinion. For the reason indicated in the text, that argument in itself provides no basis for reversal. However, because we understand that petitioner's overriding contention continues to be the one he made to the hearings officer and LUBA, we have considered the argument in his brief to LUBA as well as the one he makes here.

In this case, we need not delineate the precise relationship between ORS 197.175(2) and ORS 197.646 or, for that matter, the precise differences between the operation of those statutes and traditional preemption concepts; under *any* of the possible variations, petitioner's argument can succeed only if there is *some* conflict between Goal 11, as amended, and section 19.20.055(A)(4). In our view, no such conflict exists.

The premise of petitioner's argument is that section 19.20.055(A)(4) is concerned with where the county may permit sewers and sewer facilities to be located. However, that premise is incorrect. The concern of the county provision is, instead, with whether and under what circumstances a subdivision may be approved in the zone in question. Along with the sewer connection requirement that is of immediate concern, section 19.20.055(A) and other related provisions in the county code contain numerous other criteria for the approval of subdivisions, including housing density requirements, lot density standards, and street improvement conditions. Properly viewed, the inquiry under section 19.20.055(A)(4) is whether the sewer facilities that the ordinance makes a prerequisite to the approval of a subdivision are available. If they are not, then, as when any other development application fails to meet mandatory approval standards, the development cannot be allowed.

Petitioner's argument effectively turns the inquiry backward: he starts with the proposition that the subdivision can or must be allowed and, if the required sewer facilities cannot be provided consistently with Goal 11, the subdivision must nevertheless be allowed without them. We disagree with both his formulation of the question and his answer. Contrary to petitioner's essential premise, section 19.20.055-(A)(4) does not require sewer systems or facilities to be established or extended outside UGBs. Rather, it disallows the development of subdivisions outside UGBs—at least in this zone—if the specified sewage service and facilities are not present there to serve them.[3] Summarily stated, the county

---

[3] We are not apprised whether there is *any* land zoned as petitioner's is that is inside a UGB.

provision does not contemplate that sewers must be established or extended to facilitate the development of subdivisions; it provides that subdivisions cannot be approved or developed if the sewers are not there.

Understood in that way, section 19.20.055(A)(4) is completely consistent with the amendment to Goal 11. More fundamentally, when Goal 11 is considered in its entirety rather than with a view only to the 1994 amendment on which petitioner focuses, the county provision promotes exactly the same objectives that the goal does. The purpose of the goal is:

"To plan and develop a timely, orderly and efficient arrangement of public facilities and services to serve as a framework for urban and rural development."

The goal further provides, as it has since it was initially adopted:

"Urban and rural development shall be guided and supported by types and levels of urban and rural public facilities and services appropriate for, but limited to, the needs and requirements of the urban, urbanizable, and rural areas to be served."

Planning guidelines 2 and 3 for the goal state:

"2.   Public facilities and services for rural areas should be provided at levels appropriate for rural use only and should not support urban uses.

"3.   Public facilities and services in urban areas should be provided at levels necessary and suitable for urban uses."

Thus, the overall objectives of the goal are to regulate development as well as services and facilities, to coordinate development levels with service and facility levels and, together with Goal 14, to channel intensive uses and development to existing urban and urbanizable land first before allowing the conversion of or intense nonresource uses on the rural land that comprises the areas outside UGBs. *See 1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986). Petitioner perceives the 1994 language on which he relies as being concerned with the location of sewers, as an independent regulatory objective. We do not agree with that

perception. Read as a whole, the goal and the 1994 amend-ment are concerned with the location of *both* developments (*e.g.*, subdivisions) and facilities (*e.g.*, sewers), and with the coordination of the two as part of a greater regulatory scheme controlling urban uses on rural land.

The regulation of and relationship between urban development and urban facilities on rural land under Goal 11 is further demonstrated by the following provision, which was also added to the goal by the 1994 amendment:

"For land that is outside urban growth boundaries * * *, county land use regulations shall not rely upon the establishment or extension of a water system to authorize a higher residential density than would be authorized with-out a water system."

*See Dept. of Land Conservation.*

In sum, the requirements of Goal 11 go well beyond the limitation on the location of sewers that is set forth in the part of the 1994 amendment on which petitioner relies; the goal also regulates the location, pace and direction of residen-tial and other development, and it limits—and requires coor-dination between—the placement of urban-level develop-ment and urban-level services and facilities on rural land like the land that petitioner seeks to develop. So does section 19.20.055(A)(4) of the county code. There is no inconsistency between it and the statewide goal.

We do not imply that Goal 11 *requires* the county to have a provision that restricts subdivision development in the zone in question as stringently or in the manner that sec-tion 19.20.055(A)(4) does. That is a question for the county's legislative body to answer in the first instance, subject to the approval of a branch of the state government other than this one. *See* ORS 197.646(1); ORS 197.610 to ORS 197.625. How-ever, petitioner's position is that the goal requires the county *not* to have or apply a provision that conditions the approval and development of subdivisions on rural land in the way that section 19.20.055(A)(4) does. For the reasons indicated, we disagree, and we concur in the hearings officer's and LUBA's conclusion that that county provision is a "valid" one that applies to and precludes the granting of petitioner's

application. Accordingly, we reject petitioner's first assignment of error.

■ In his second assignment, petitioner argues that the county's application of section 19.20.055(A)(4) to proposed subdivisions like his "amounts to an illegal de facto moratorium on the development of land." Therefore, petitioner asserts, the county's action is inconsistent with ORS 197.505 *et seq*. ORS 197.505(1) provides:

> " 'Moratorium on construction or land development' means engaging in a pattern or practice of delaying or stopping issuance of permits, authorizations or approvals necessary for the subdivision and partitioning of, or construction on, any land. *It does not include denial or delay of permits or authorizations because they are inconsistent with applicable* statutes, rules, *zoning or other laws or ordinances,* or a public facilities strategy that meets the provisions of ORS 197.768." (Emphasis supplied.)

Petitioner's second assignment fails with his first. The language of ORS 197.505(1) that we have emphasized makes it clear that the denial of subdivision and other applications that do not meet applicable approval standards in local zoning ordinances does not come within the definition of a moratorium. Petitioner contends, however, that because section 19.20.055(A)(4) contravenes Goal 11, it is "inapplicable" and, therefore, the denial of the proposed subdivision on the basis of the county provision "amounts to a moratorium." Because petitioner is incorrect in contending that section 19.20.055(A)(4) is inconsistent with the goal, the remainder of the argument that he builds around his contrary premise is also incorrect. The other arguments that petitioner makes under his second assignment are unmeritorious, and we reject the assignment.

Petitioner makes one further assignment of error. It shows no error and requires no discussion.

Affirmed.