Argued and submitted August 25, affirmed November 24, 2010

Paul E. FOLAND,
*Respondent*
*Cross-Petitioner,*

*and*

Constance J. FOLAND,
*Respondent,*

*v.*

JACKSON COUNTY,
*Respondent below,*

*and*

OREGON DEPARTMENT OF TRANSPORTATION,
*Petitioner*
*Cross-Respondent.*

Daniel FOLLIARD,
James McIntosh, Lois Langlois, Dan Baty,
John Easter, and Michael Bianco,
*Respondents,*

*v.*

JACKSON COUNTY,
*Respondent below,*

*and*

OREGON DEPARTMENT OF TRANSPORTATION,
*Petitioner.*

Allen BAKER,
John Weisinger, Steven Stolzer, Jean Morgan,
Michael Morgan, Suzanne Frey, and Gail Zaro,
*Respondents,*

*v.*

JACKSON COUNTY,
*Respondent below,*

*and*

OREGON DEPARTMENT OF TRANSPORTATION,
*Petitioner.*

Land Use Board of Appeals
2009109, 2009112, 2009113;
A145890

243 P3d 830

Karla H. Ferrall, Assistant Attorney General, argued the cause for petitioner-cross-respondent. With her on the briefs were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Anne C. Davies argued the cause and filed the brief for respondents and respondent-cross-petitioner.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

## HASELTON, P. J.

Petitioner Oregon Department of Transportation (ODOT) seeks judicial review, and respondent Paul Foland cross-petitions for judicial review, of an order of the Land Use Board of Appeals (LUBA) in which LUBA remanded Jackson County's decision approving ODOT's application to site an interstate highway rest area and welcome center on land that is zoned for exclusive farm use and is approximately 500 feet south of the urban growth boundary of the City of Ashland. We reject without discussion Foland's seven assignments of error on cross-petition. We write only to address ODOT's sole legal contention that LUBA erred in concluding that Goal 11, which concerns the planning and development of public facilities and services, "prohibits the extension of city water services to serve [ODOT's] urban use[, *viz.*, the rest area and welcome center,] on rural land without an exception to Goal 11." We determine that LUBA's order in that regard was not "unlawful in substance," ORS 197.850(9)(a), and, consequently, affirm on petition and cross-petition.

Because it provides context for the parties' contentions, before turning to the facts, we describe the general policy underlying Goal 11 and OAR 660-011-0065, its implementing rule concerning water systems. Generally, Goal 11 concerns the "plan[ning] and develop[ment of] a timely, orderly and efficient arrangement of public facilities and services to serve as a framework for urban and rural development." Such development "shall be guided and supported by types and levels of urban and rural public facilities and services[1] appropriate for, *but limited to*, the needs and requirements of the urban, urbanizable, and rural areas to be served." (Emphasis added.)

Consistently with those requirements, the goal establishes several guidelines to aid in the planning of public

---

[1] Goal 11 defines "rural facilities and services" to mean "facilities and services suitable and appropriate *solely* for the needs of rural lands" and "urban facilities and services" to mean "key facilities and * * * appropriate types and levels of at least the following: police protection; sanitary facilities; storm drainage facilities; planning, zoning and subdivision control; health services; recreation facilities and services; energy and communication services; and community governmental services." (Emphasis added.)

facilities and services. Each guideline "is advisory, not mandatory," and "suggests an approach designed to aid agencies and others to comply with the Goal." *Audubon Society v. Dept. of Fish and Wildlife*, 67 Or App 776, 780, 681 P2d 135 (1984).[2] As pertinent here, Guideline A(2) provides that "[p]ublic facilities and services for rural areas should be provided at levels appropriate for rural use only and should not support urban uses" and Guideline A(3) provides that "[p]ublic facilities and services in urban areas should be provided at levels necessary and suitable for urban uses."

In short, Goal 11 concerns the provision of public facilities and services. Specifically, the goal requires an "orderly and efficient arrangement of public facilities and services" and is intended to regulate development by limiting facilities and services to "the needs and requirements of the urban, urbanizable, and rural areas to be served." In other words, by limiting facilities and services to the needs and requirements of the land to be served (*i.e.*, urban, urbanizable, rural), Goal 11 helps prevent the proliferation of urban uses in rural areas that might otherwise result from the extension of urban-level facilities and services outside an urban growth boundary (UGB) to rural land.

Goal 11 expressly contemplates the regulation of two types of "public facilities and services"—that is, sewer systems and water systems. In 1998, the Department of Land Conservation and Development promulgated OAR 660-011-0060 and OAR 660-011-0065, two rules to implement the specific goal provisions concerning sewer and water systems. With regard to sewer systems, the text of the goal and OAR 660-011-0060, as a general matter, prohibit the establishment or extension of a sewer system to serve land outside of a UGB, without an exception to Goal 11.[3]

---

[2] *See* ORS 197.015(9) (" 'Guidelines' means suggested approaches designed to aid cities and counties in preparation, adoption and implementation of comprehensive plans in compliance with goals and to aid state agencies and special districts in the preparation, adoption and implementation of plans, programs and regulations in compliance with goals. Guidelines shall be advisory and shall not limit state agencies, cities, counties and special districts to a single approach.").

[3] To illustrate the point, the goal provides:

"Local Governments shall not allow the establishment or extension of sewer systems outside urban growth boundaries or unincorporated community boundaries, or allow extensions of sewer lines from within urban growth

Conversely, with regard to water systems, the goal and the pertinent rule, OAR 660-011-0065(2), do not, as a general matter, categorically prohibit the establishment or extension of water systems to serve land outside of a UGB. Instead, the goal provides that

"[l]ocal governments shall not rely upon the presence, establishment, or extension of a water or sewer system to allow residential development of land outside urban growth boundaries or unincorporated community boundaries at a density higher than authorized without service from such a system."

In turn, OAR 660-011-0065(2) provides:

"Consistent with Goal 11, local land use regulations applicable to lands that are outside urban growth boundaries and unincorporated community boundaries shall not:

"(a)    Allow an increase in a base density in a residential zone due to the availability of service from a water system;

"(b)    Allow a higher density for residential development served by a water system than would be authorized without such service; or

---

boundaries or unincorporated community boundaries to serve land outside those boundaries, except where the new or extended system is the only practicable alternative to mitigate a public health hazard and will not adversely affect farm or forest land.

"Local governments may allow residential uses located on certain rural residential lots or parcels inside existing sewer district or sanitary authority boundaries to connect to an existing sewer line under the terms and conditions specified by Commission rules."

Consistently, OAR 660-011-0060(2) provides:

"Except as provided in [other sections] of this rule, and consistent with Goal 11, a local government shall not allow:

"(a) The establishment of new sewer systems outside urban growth boundaries or unincorporated community boundaries;

"(b)  The extension of sewer lines from within urban growth boundaries or unincorporated community boundaries in order to serve uses on land outside those boundaries;

"(c) The extension of sewer systems that currently serve land outside urban growth boundaries and unincorporated community boundaries in order to serve uses that are outside such boundaries and are not served by the system on July 28, 1998."

"(c)  Allow an increase in the allowable density of residential development due to the presence, establishment, or extension of a water system."

Of significance, although the goal and the rule are clearly concerned with a local government's use of the establishment or extension of a water system as a justification to increase *residential* densities in an area outside a UGB, the goal and the rule are silent as to whether Goal 11's underlying objectives permit the extension of water systems to rural lands to serve a *nonresidential* urban use without an exception.

In *Gisler v. Deschutes County*, 149 Or App 528, 535, 945 P2d 1051 (1997), we noted that the goal's specific proscriptions concerning sewer and water systems did not circumscribe the three "overall objectives" that Goal 11 was intended to further.[4] In that case, the petitioner sought to build a subdivision in a "low-density residential zone" that was outside a UGB. *Id.* at 530. With regard to subdivisions, the Deschutes Development Code required that all lots be connected to a " 'Department of Environmental Quality-permitted community or municipal sewer system.' " *Id.* However, the petitioner's proposed development "[was] not connected to an existing sewer system, and there [was] no existing city or community sewer system that [was] located or ha[d] facilities outside the UGB and that [was] near the subdivision site." *Id.* In rejecting petitioner's argument that the county requirement was invalid because it was inconsistent

---

[4] We decided *Gisler* in 1997, before the 1998 amendments to the goal and the promulgation of OAR 660-011-0060 and OAR 660-011-0065. Instead, our decision in *Gisler* was predicated on the 1994 version of the goal, which contained the following provisions concerning sewer and water systems:

"Counties shall not allow the establishment of new sewer systems outside urban growth boundaries or unincorporated community boundaries, or allow new extensions of sewer lines from within urban growth boundaries or unincorporated community boundaries to land outside those boundaries.

"For land that is outside urban growth boundaries and unincorporated community boundaries, county land use regulations shall not rely upon the establishment or extension of a water system to authorize a higher residential density than would be authorized without a water system."

Because the provisions of the current version of the goal are substantively similar to the provisions in *Gisler* on which we relied and because the administrative rules were promulgated to implement those provisions, our reasoning in *Gisler* controls our understanding of the general policies underlying Goal 11.

with the Goal 11 proscriptions concerning sewer systems, we explained the objectives underlying the goal.

Citing *1000 Friends of Oregon v. LCDC (Curry Co.)*, 301 Or 447, 724 P2d 268 (1986) *(Curry County)*, we reasoned that

> "the overall objectives of [Goal 11] are to regulate development as well as services and facilities, to coordinate development levels with service and facility levels and, together with Goal 14, to channel intensive uses and development to existing urban and urbanizable land first before allowing the conversion of or intense nonresource uses on the rural land that comprises the areas outside UGBs."[5]

*Gisler,* 149 Or App at 535. In sum, we concluded that "the requirements of Goal 11 go well beyond" the limitations on sewer and water systems and that more generally Goal 11 "regulates the location, pace and direction of residential and other development, and it limits—and requires coordination between—the placement of urban-level development and urban-level services and facilities on rural land * * *." *Id.* at 536.

With that essential understanding of the goal, we turn to the facts of this case, as recounted in LUBA's order. In 2008, ODOT applied to site a rest area and welcome center (rest area) on an 18-acre parcel of land located approximately 500 feet south of the UGB of the City of Ashland and zoned for exclusive farm use. ODOT's application indicated that it would obtain water service "from the City of Ashland by extending city water lines to the subject property."

As LUBA explained, the county, in approving ODOT's application,

> "granted exceptions to Goals 3 and 14 for the proposed rest area to be sited on rural land. In approving an exception to Goal 14 for the rest area, we understand the county to have

---

[5] As we recognized in *Gisler,* although Goals 11 and 14 are interrelated, Goal 14 concerns urbanization and has a distinct underlying purpose—*viz.,* "[t]o provide for an orderly and efficient transition from rural to urban land use, to accommodate urban population and urban employment inside urban growth boundaries, to ensure efficient use of land, and to provide for livable communities." *See also Curry County,* 301 Or at 474 (reasoning that "the policy of Goal 14 is to contain urbanization within acknowledged UGBs").

> determined that a rest area serving over a million visitors a
> year is an urban use of rural land that would otherwise be
> prohibited by Goal 14 without an exception."

With regard to the extension of city water service to the property, however, the county did not take an exception to Goal 11 because it determined that " '[t]he extension of water * * * service to the Rest Area is consistent with [that goal].' "[6]

Foland and others appealed the county's decision to LUBA. As pertinent to the applicability of Goal 11, they contended that the county should have taken an exception to Goal 11 for the extension of water service to the property because the proposed rest area "is an urban use" on rural land and that Goal 11 "prohibits the extension of urban-level facilities and services onto rural lands."

ODOT intervened and asserted that the county correctly determined that an exception to Goal 11 was not required. Specifically, ODOT contended that the text of OAR 660-011-0065 controlled and "limited a need for a goal exception for water service to residential uses." ODOT explained that,

> "[a]lthough water systems and water are discussed in
> Goal 11, the current rule does not prohibit extending water
> service outside of a UGB to *non-residential development.*
> The Safety Rest Area/Welcome Center is not a residential
> development. If [the Land Conservation and Development
> Commission (LCDC)] had intended otherwise, it could have
> said so as clearly as the policy against extension of sewer
> systems."

(Emphasis in original.)

Based on the text of Goal 11 and the history of the amendments to the goal, and the promulgation of OAR 660-011-0065, LUBA ultimately concluded that "Goal 11 prohibits the extension of city water services to serve that urban use[, *viz.*, the rest area,] on rural land without an exception to Goal 11." Specifically, LUBA reasoned:

---

[6] The county, however, did take an exception to Goal 11 with regard to the extension of *sewer* services to the site.

"OAR 660-011-0065 took effect in July, 1998, in response to the Court of Appeals' decision in *Dept. of Land Conservation v. Lincoln County*, 144 Or App 9, 925 P2d 135 (1996)[, *rev den*, 324 Or 560 (1997)]. In *Lincoln County*, DLCD challenged the county's approval of 113 residential lots on a 50-acre parcel of land outside of an urban growth boundary (the 'Mariner's Village' development). The property was within the boundaries of an existing water district, and the proposed density of the subdivision was higher than would otherwise be permitted without the property's location within the water district boundaries. LUBA held that under a prior version of Goal 11, the proposed extension of water lines to each individual lot from the main water district line violated Goal 11 because it was an 'extension of a water system' under the then-applicable Goal 11 language. * * * The Court of Appeals disagreed, finding that the phrase 'establishment or extension of a water system' referred to the 'new *or* expanded presence of water systems in areas where none was present before.' *Id.* at 17 (emphasis in original).

"In response to the court's holding, LCDC enacted OAR 660-011-0065 * * *. The rule does make clear that Goal 11 is concerned with the presence or availability of a sewer or water system facilitating increased residential density on rural land, presumably because that could lead to rural land being put to urban use in contravention of Goal 14. *However, the history of the enactment of that rule indicates that LCDC did not intend to address the universe of concerns under Goal 11 in enacting the rule, or to in all circumstances allow a water system to serve* non-residential *urban uses on rural land without an exception to Goal 11.* Thus, we agree with [the petitioner] that OAR 660-011-0065 does not purport to identify the universe of Goal 11 concerns regarding extension of water systems onto rural land. Where the extension of a water system onto rural lands is proposed to facilitate an urban use of that land, the extension is prohibited without an exception to Goal 11. In the present case, the county granted an exception to Goal 14 for the rest area * * *, presumably because a use that attracts over a million visitors a year constitutes an urban use. Goal 11 prohibits the extension of city water services to serve that urban use on rural land without an exception to Goal 11."

(Footnotes omitted; emphasis added.)

██ ODOT petitioned for judicial review. On review, the parties renew the core contentions presented to LUBA. Specifically, ODOT reiterates that, although "[t]he underlying policy of Goal 11 is to match public facilities with appropriate development plans[,]" the text and context of Goal 11 and the history surrounding the enactment of OAR 660-011-0065 conclusively demonstrate that Goal 11 only "prohibits a local government from increasing *residential densities* in rural areas, based on * * * an extension" of "city water services outside the [UGB]." (Emphasis added.) In other words, ODOT contends, without qualification, that the goal does not "limit the extension of water systems to *non-residential* uses on rural land." (Emphasis added.) For the reasons that follow, we disagree with ODOT and conclude that the county was required to take an exception to Goal 11 to extend water service to the rest area.

Resolution of the parties' competing contentions requires that we discern the meaning of Goal 11. In doing so, we are guided by the principles described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), as amplified in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). In sum, here, we attempt to determine the meaning of the goal most likely intended by LCDC—the agency that adopted it—examining the text in context along with the history concerning the goal's amendments offered by the parties.

ODOT is correct that—unlike the provisions concerning sewer systems—neither the goal nor OAR 660-011-0065 governing water systems expressly and categorically prohibits the extension of water services to rural areas. Nonetheless, reference to the overarching policies of Goal 11 and the history of amendments to the goal contradict ODOT's characterization of the significance of that distinction.

As noted, at the time that we decided *Gisler*, the text of Goal 11 included substantively similar proscriptions concerning water and sewer systems. *See* 239 Or App at 66 n 4. In *Gisler*, we reasoned that a proper understanding of Goal 11 required that we look at the goal in its entirety rather than with a view only to the particular proscriptions concerning water and sewer systems. Ultimately, we concluded that

Goal 11 "regulates the location, pace and direction of residential and other development, and it *limits*—and requires coordination between—*the placement of urban-level development and urban-level services and facilities on rural land * * *.*" *Gisler*, 149 Or App at 536 (emphasis added). Consistently with that objective, we conclude that, in this case, the extension of water services to the rest area—a nonresidential urban use—on rural land does not comport with Goal 11 and, consequently, the county was required to take an exception to extend the water services in this case.

Further, we disagree with ODOT that the history surrounding the 1994 and 1998 goal amendments and the promulgation of OAR 660-011-0065 in 1998 conclusively lead to a contrary conclusion. Specifically, as further support for its contention that Goal 11 does not "limit the extension of water systems to non-residential uses on rural land," ODOT refers to various documents from the Department of Land Conservation and Development (DLCD) as well as LCDC that demonstrate that the 1994 and 1998 changes were grounded in an intent to prevent urban-level residential densities in rural areas due to the establishment or extension of a water system.

Although we agree with ODOT that the prevention of urban-level residential densities was the chief concern that led to the amendments to the goal and the promulgation of the rule, the documents do not, as LUBA indicated, "purport to identify the universe of Goal 11 concerns regarding extension of water systems onto rural land." In fact, in a memorandum from DLCD to LCDC regarding a public hearing concerning the 1998 amendments, DLCD acknowledges that, even in light of the 1998 amendments,

"[t]he other general requirements of Goal 11, especially the definitions of rural facilities and services, could be interpreted to mean that water systems to serve rural areas are inappropriate in some circumstances. That question is not addressed by this report."

In other words, the documents on which ODOT relies do not purport to identify the "universe" of cognizable Goal 11 concerns or demonstrate that the general policies underlying Goal 11 as described in *Gisler* were somehow circumscribed

by subsequent amendments. Rather those documents indicate merely that the amendments were designed to deal only with a specific concern about water systems (*viz.*, the prevention of urban-level residential densities in rural areas due to the establishment or extension of a water system).[7]

In sum, we conclude, as did LUBA, that "Goal 11 prohibits the extension of city water services to serve that urban use on rural land without an exception to Goal 11." As LUBA reasoned,

> "where an exception to Goal 14 is required in order to site an urban use on rural land, a corresponding exception to Goal 11 will be required where the intensity of urban use of land requires the provision of public sewage facilities and services for health and safety reasons. In that circumstance, it may well be that the same factors that justify an exception for extending the city's sewer system onto the subject property, or the same factors that justify the Goal 14 exception to site the urban use on rural land, could serve as justification for extending water service onto the property. However, an exception to Goal 11 to extend water service is still required."

Accordingly, we affirm.

Affirmed.

---

[7] We also note that the documents also indicate that, although an outright prohibition was preferred with regard to the establishment and extension of sewer systems, a similar approach was not preferred concerning water systems because of the interrelationship between the goal and federal drinking water standards.