Argued and submitted November 20, 2000, affirmed on petition and on cross-petition February 7, 2001

OREGON ENTERTAINMENT CORPORATION,
*Petitioner - Cross-Respondent,*

*v.*

CITY OF BEAVERTON,
*Respondent - Cross-Petitioner,*

*and*

PARK PLAZA WEST, LLC,
*Respondent.*

(LUBA 99-198; CA A111488)

19 P3d 918

Bradley J. Woodworth argued the cause for petitioner - cross-respondent. With him on the briefs was Cobb, Woodworth & Holloway.

Mark Pilliod argued the cause for respondent - cross-petitioner. Jeffrey G. Condit argued the cause for respondent. With them on the brief were James F. Dulcich and Miller Nash LLP.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Kistler, Judge.

KISTLER, J.

## KISTLER, J.

Petitioner operates the Fantasy Adult Video store (Fantasy Video) in the City of Beaverton. Respondent Park Plaza West (PPW) operates an office complex that adjoins the Fantasy Video location. The zone in which Fantasy Video is located allows commercial uses to be conducted between 7:00 a.m. and 10:00 p.m. but requires a conditional use permit to allow operations between 10:00 p.m. and 7:00 a.m. Petitioner applied to the respondent city for such a conditional use permit, with the effect that Fantasy Video would be allowed to operate on an around-the-clock basis. The city council denied the application. Petitioner appealed to LUBA, which affirmed the city's decision. Petitioner now seeks our review and we also affirm.

Among the approval criteria that an applicant must satisfy to obtain a conditional use permit of the kind in question is the one set forth in section 40.05.15.2.C.3 (criterion 3) of the city's development code. It requires a finding

"[t]hat the location, size, design, and functional characteristics of the proposed use are such that it can be made reasonably compatible with and have a minimum impact on the livability and appropriate development of other properties in the surrounding neighborhood."

The city council interpreted criterion 3 as embodying

" 'subjective factors, such as effects on neighborhood uses, vacancies, potential for criminal activity and the character of the area surrounding the use.' "

Evidence was presented in the city proceedings that criminal and other wrongful activities were occurring in the vicinity of another adult business that operates 24 hours a day in another zone in the city, and also in the vicinity of still another adult business that petitioner operates in Portland. There was also evidence that PPW had and would lose tenants if the 24-hour operation of Fantasy Video were allowed. The city council concluded that the application did not satisfy criterion 3 and that the extended operation of Fantasy Video would have deleterious effects on PPW's business. The council's findings state, *inter alia*:

"[B]ecause the current use does not operate during the hours of 10 p.m. to 7 a.m. the Council must necessarily predict whether or not the proposed use will generate these effects. As will be explained, [the] Council's decision is based on an evaluation of the existing use, similar uses and other area establishments."

Additionally, as summarized by LUBA:

"The city's findings go on to explain that some of the parking for Fantasy Video is not visible from Beaverton-Hillsdale Highway and therefore is not easily observed by police. The findings also explain that the 'opportunities for undetected vandalism and other criminal behavior' in this area increase at night 'due to limited lighting.' * * * The decision relies on evidence from and testimony concerning a police sting operation that resulted in a number of arrests for prostitution near D.K. Wild's, an adult video store located in a different location in the city that allows a 24-hour operation. * * * The findings also cite and rely on written testimony from the Executive Director of Teen Challenge, a nonprofit business located next to the Sandy Boulevard Fantasy Video, concerning vandalism, prostitution and illegal drug activity at that store. * * * The findings note testimony by several of petitioner's landlords concerning a lack of criminal activity around Fantasy Video stores, but the city finds that testimony to be less credible than the Teen Challenge Executive Director's testimony concerning criminal activity around the Sandy Boulevard store."

Finally, the council made the ultimate finding:

"When the * * * evidence is considered in total, it constitutes substantial evidence that problems are likely to occur if Applicant is allowed to operate on a 24-hour basis. That such problems are likely to have a negative impact on the existing businesses and property owners is illustrated by the fact that Park Plaza West has already lost tenants because of concerns about the activities cited * * * as occurring around Applicant's [Sandy Boulevard] business.

"Based on the foregoing the Council concludes the applicant has failed to establish that the location, size, design, and functional characteristics of the proposed use are such that

it can be made reasonably compatible with and have a minimum impact on the livability and appropriate development of other properties in the surrounding neighborhood."[1]

Petitioner asserted in its appeal to LUBA, *inter alia*, that the city's decision was not supported by substantial evidence in the whole record, at least insofar as it relied on the evidence of putative criminal activities in the environs of the two other adult businesses. LUBA rejected that argument and also rejected petitioner's contention that the city's decision violated petitioner's right to free expression under Article I, section 8, of the Oregon Constitution. Petitioner now repeats both arguments to us, and we also reject them.[2]

■ The essence of petitioner's first argument is that there was no evidence of criminal or other nefarious activity in connection with this Fantasy Video store, that the evidence of such activity at the other adult business locations is not relevant to this Fantasy Video location and, therefore, the city's decision concerning criterion 3 was not supported by substantial evidence in the whole record because it was based wholly or in the main on the irrelevant evidence derived from the other businesses.

We disagree with petitioner's assertion that the evidence is irrelevant. It has a tendency to show that there is an increased potential for criminal activity at similar businesses that operate during the nighttime hours. Together with the city council's interpretation of criterion 3 as being concerned with "potential for criminal activity"[3] and its related finding about the increased problems with nighttime crime prevention in proximity to the Fantasy Video location, the evidence is clearly relevant. We agree with PPW that petitioner's argument confuses relevance and weight.

■■ Similarly, insofar as the substantial evidence argument presents a separate question, we agree with LUBA that

---

[1] Because the application's failure to satisfy criterion 3 independently precluded its approval, we do not address either the city's or LUBA's dispositions pertaining to other applicable approval standards.

[2] The other arguments that petitioner advances here do not warrant discussion.

[3] In its argument *here*, petitioner does not challenge that interpretation, nor should it. *See Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992).

the substantial evidence test of *Younger v. City of Portland*, 305 Or 346, 752 P2d 262 (1988), does not allow LUBA or the courts to reweigh evidence in the guise of assessing its substantiality. Rather, the question is whether the evidence, viewed as a whole, permitted the factfinder to reasonably reach the conclusion that it did. *See 1000 Friends of Oregon v. Marion County*, 116 Or App 584, 842 P2d 441 (1992). We hold, as did LUBA, that the evidence petitioner challenges was relevant and that there was substantial evidence in the whole record to support the city's findings.

■    We next consider petitioner's argument that the city's denial of the conditional use permit violates petitioner's right of expression under Article I, section 8. We agree with the portions of LUBA's analysis and disposition of that argument that we will now summarize. LUBA first noted that criterion 3 is a regulation that falls into the "third category" of *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982). That is, it is a regulation that focuses "on forbidden effects, but without referring to expression at all." *State v. Plowman*, 314 Or 157, 164, 838 P2d 558 (1992), *cert den* 508 US 974 (1993). As such, it is subject to challenge under Article I, section 8, only to determine if it violates the constitutional provision as applied. *Robertson*, 293 Or at 417. Hence, LUBA defined the inquiry before it to be

"whether the city's application of criterion 3 'impermissibly burdens [petitioner's] right of free speech guaranteed by Article I, section 8.' [*City of Eugene v. Miller*, 318 Or 480, 490, 871 P2d 454 (1994)]."

Before LUBA, as here, petitioner placed its principal reliance on *City of Portland v. Tidyman*, 306 Or 174, 759 P2d 242 (1988), where the court held that an ordinance regulating the location of adult businesses was invalid under Article I, section 8. As LUBA pointed out, however, the ordinance in *Tidyman* expressly regulated the permissible locations of the businesses, and it was flatly directed at the "content of the protected 'speech' that was the stock [in] trade of those adult businesses[.]" LUBA further noted that, in *Tidyman*:

"In rejecting the city's argument that its ordinance could be sustained as an 'effect' rather than a content-based 'speech' regulation, the court rejected the city's argument that it

could rely on 'vague and conclusory' legislative findings contained within the ordinance about the effects of adult businesses. The court pointed out those findings did 'not purport to be findings of adjudicative facts' and described the findings as 'only a recital of premises for legislation.' *Id.* at 185. The court went on to state that '[o]ur cases under Article I, section 8, preclude using apprehension of unproven effects as a cover for suppression of undesired expression, because they require regulation to address the effects rather than the expression as such.' *Id.* at 188. Petitioner's Article I, section 8 arguments rely almost entirely on this statement and related statements concerning the requirements for regulations directed at effects rather than speech and arguments noted earlier in this opinion that challenge the quality and quantity of evidence that the city relied upon in finding that criterion 3 is not satisfied." (Footnote omitted.)

LUBA found the following statement in *Tidyman* to be more apposite:

"A grocery store gains no privilege against a zoning regulation by selling The National Enquirer and Globe at its check-out counter. The same applies to 'adult businesses' that sell other merchandise besides books, pictures or records. Even structures and activities unquestionably devoted to constitutionally privileged purposes such as religion or free expression are not immune from regulations imposed for reasons other than the substance of their particular message. Many regulations are not impermissible laws 'restricting the right to speak, write, or print freely on any subject whatever,' although they can be impermissibly applied in individual cases.

"A regulation is not always unconstitutional because it restricts one's choice of a place or time for self-expression or religious practice, when that is not the object of the regulation. The concern may be with the medium, not the message, as when park regulations ban fireworks even for a Fourth of July celebration. To decline an exception from a land-use regulation for a theater, a printing plant or a church differs from attempting to restrict prayer meetings, film showings or desktop publishing in a residence, or in turn from enforcing safety codes or parking restrictions when a residence is so used. Similarly, it can make a difference whether a city imposes a permissible limitation on all location, time, manner, intensity, or invasive effect of some

communicative activity (for instance, zones out all book-
stores along with other commercial shops, or restricts all
use of sound trucks in residential areas to specified hours),
or whether it concludes that limitations of number, fre-
quency, density, or duration suffice to serve the city's regu-
latory objective." 306 Or at 182-83 (footnote omitted).

LUBA concluded:

"Unlike the ordinance at issue in *Tidyman*, criterion 3 is
not expressly directed at protected speech. Unlike the city's
attempt to enforce its ordinance in *Tidyman*, the city's
application of criterion 3 here is supported by adjudicative
findings that the effects that criterion 3 proscribes (incom-
patibility and more than minimal impacts on livability) will
result if the requested conditional use permit is granted.
Finally, unlike the city's legislative findings in *Tidyman*,
the city's adjudicative findings in this case are supported by
substantial evidence (evidence a reasonable person would
find adequate to support a conclusion that criminal activity
and resulting vacancies will result in the effects that crite-
rion 3 proscribes). To the extent petitioner argues that
*Tidyman* requires that the city must sustain a higher evi-
dentiary burden in this case, we reject the argument."

A final aspect of LUBA's analysis that bears mention
is its observation that

"[p]etitioner makes no arguments that its ability to success-
fully operate its business at [this] location depends on it
being granted more liberal operating hours than its com-
mercial neighbors. Petitioner never argues that the city's
application of criterion 3 'impermissibly burdens' its right
to operate an adult video establishment. *Miller*, 318 Or at
490. Petitioner is seeking preferential treatment, via a con-
ditional use permit under the city's land use regulations,
rather than seeking to avoid an additional regulation that
is not also imposed on petitioner's commercial neighbors, as
was the case in *Tidyman*."

In all of the foregoing respects, we agree with LUBA.
The essence of petitioner's argument is that, because it
engages in a business that enjoys the protection of Article I,
section 8, not only may it not be made subject to the same
zoning regulations that other businesses are, but it must also
be given advantageous zoning treatment—*e.g.*, extended
operating hours—under circumstances where the preferred

treatment would not be accorded to businesses of other kinds. We do not share petitioner's underlying understanding that Article I, section 8, insulates speech-related businesses from generally applicable zoning regulations, as distinct from preventing the use of zoning as an artifice to regulate the content of speech.

■    Petitioner makes two arguments to us that LUBA did not specifically address or that are phrased as challenges to LUBA's decision rather than the city's. First, petitioner contends that the city has allowed a conditional use permit in the zone for the 24-hour operation of a fast food restaurant; hence, petitioner would conclude, it follows that the denial of a similar permit for it gives rise to an impermissible and selective burden on speech. We see no such *ipso facto* relationship, and petitioner provides no details (not to mention a record) to suggest that the fast food operation or the application for its permit bears any meaningful similarity to the situation at hand.

■    Second, and perhaps relatedly, petitioner contends that its application was denied solely on the basis of evidence that criminal and other unsavory activity was occurring at other adult businesses that operate during the nighttime hours; consequently, as petitioner views things, no adult business could ever qualify for a conditional use permit to operate on a 24-hour basis in this zone, and the zoning restriction is therefore a *de facto* regulation of the content of speech. Petitioner's contention assumes a universal result from the denial of this particular permit, and it reasons backward from that assumption to the conclusion that the denial of this permit was unjustified on its own terms. However, in the absence of any convincing showing of pretext or of error in the denial of this permit, petitioner's inverse syllogism simply does not work. We have no basis for predicting what evidence or findings might be adduced or made in connection with any other application that may be made for a permit to operate an adult business on a 24-hour basis in this zone. Again, we agree with the statement of LUBA:

> "We also note that, throughout the petition for review, petitioner suggests that it believes the city's denial of the conditional use permit on the basis of criterion 3 and other

[city] requirements is a pretext and that the real reason for the city's denial is its disapproval of the adult nature of petitioner's business. If we agreed with petitioner that the real reason the city denied the requested conditional use permit was the city council's disapproval of the nature of petitioner's business, it would necessarily follow that the city's decision violates Article I, section 8. From our review of the record, including the statements made by individual city councilors and the mayor, we cannot say petitioner's belief is without any support. However, we do not agree that the record, viewed as a whole, includes sufficient evidence to support a conclusion that the city council's objection to the adult nature of petitioner's business is the real reason the city council denied petitioner's application."

We affirm on the petition. Given that disposition, we need not reach the issue raised in the cross-petition.

Affirmed on petition and on cross-petition.