Argued and submitted July 9, affirmed September 11, 2002

Mark YEAGER,
Janice Russnogle, M.D., Peggy Lynch, Tim Boyd,
Cat Newsheller, Kim Golletz, Dan Golletz,
Linda Hardison, Scott Sundberg, Mike Lahr,
Ann Lahr, Janet Ohmann, Joe Crockett,
Doug Pollock, Darcie Hamel, Kerry Schoning,
Jean Townes, Dave Vesely and Joan Hagar,
*Petitioners,*

*v.*

BENTON COUNTY,
Patrick O'Dell and Marti O'Dell,
*Respondents.*

LUBA No. 2001-185; A118104

53 P3d 459

James V. B. Delapoer argued the cause for petitioners.
With him on the brief was Long, Delapoer, Healy, McCann
& Noonan, P.C.

No appearance for respondents.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

LANDAU, P. J.

## LANDAU, P. J.

Petitioners seek review of a Land Use Board of Appeals (LUBA) order affirming a Benton County Board of Commissioners (board) decision to grant a conditional use permit to allow a "horse training and boarding facility" on land zoned rural residential (RR). We affirm.

We take the facts from LUBA's order. Patrick and Marti O'Dell own a 3.9-acre parcel zoned RR. In May 2000, the O'Dells applied for and received county approval to construct a pole barn. They constructed an 11,664 square foot pole barn that contains an indoor riding arena and 19 horse stalls. Neighbors complained to the county that the O'Dells were using the barn as a commercial horse stable. The county planning staff investigated and ultimately sent the O'Dells a letter warning them that commercial use of the facility required a conditional use permit.

The O'Dells then applied for an interpretation of the Benton County Code (BCC) to determine whether the staff was correct in asserting that a horse boarding operation and riding arena are uses that are permitted outright within property zoned RR. The BCC expressly provides a procedure by which applicants may obtain interpretations of the code and of the Benton County Comprehensive Plan from a designated planning official. BCC 51.205. According to the O'Dells, their proposed operation qualified as a "farm use," which is permitted in RR zones. On February 12, 2001, the designated county planning official issued an interpretation of the BCC concluding that the activities did not qualify as a "farm use" and that "a horse facility exceeding personal use is a recreational facility which requires conditional use approval" in land zoned RR. The O'Dells appealed that decision to the county planning commission, which affirmed the interpretation of the planning official.

The O'Dells appealed to the board, but later withdrew the appeal. Instead, they applied for a conditional use permit for the proposed recreational facility in the RR zone. They proposed a horse training and boarding facility for profit used in conjunction with an educational program offered to children. The planning commission approved the

conditional use permit. Petitioners, a group of neighboring residents, appealed that decision to the board. They argued that the proposed use is not a recreational facility but is, instead, a "commercial riding arena," a use that is not permitted in land zoned RR. The board approved the permit on two independent grounds.

First, the board noted that the planning official already had construed the applicable provisions of the code to permit the use as a recreational facility with the approval of a conditional use permit. The board further noted that that decision was not appealed. Therefore, it concluded, petitioners were barred from challenging it.

Second, the board expressly stated a separate ground for affirming, namely that, based on its own interpretation of the BCC, the proposed use is a recreational use that is permitted as a conditional use within land zoned RR:

> "A separate ground for rejecting the argument [of petitioners] is that this application covers multiple uses. The use of the riding arena and stabling facility is part of an educational program. The educational component of the application is very similar to the daycare facility which would be allowed as an outright use within the zone. It is also similar to a school, which is allowed as a conditional use. Finally, it is also a recreational facility that is allowed as a conditional use. * * * Similar facilities have been treated as such for the previous 12 years by the County.

> "* * * * *

> "*Conclusion:* The proposed uses of a horse training and boarding facility, special events, and an education program will not seriously interfere with uses on adjacent property, the character of the area, or the purpose of the RR zone. The proposed uses shall [not] place an undue burden on any public improvements, facilities, utilities or services. * * * The proposed use is properly treated as a recreational facility, with components similar to a school and daycare center, and is properly reviewed as a conditional use."

Petitioners sought review before LUBA. Petitioners argued that the board erred because it relied on an interpretation of the BCC by the planning official that was both substantively and procedurally defective for a variety of reasons.

LUBA disagreed, noting that the board had not based its decision solely on the planning official's interpretation but on its own independent interpretation of the BCC as well. That interpretation, LUBA concluded, was not clearly erroneous.

■ On review to us, petitioners contend that LUBA erred in concluding that the board engaged in an independent interpretation of the BCC. According to petitioners, nothing in the board's decision expressly states that it is engaging in an official interpretation, and nothing in the record reflects compliance with the requirements for issuing an official interpretation, as provided in BCC 51.205(1).

Petitioners' argument that the board's decision is not based in part on its own interpretation of the BCC is not persuasive. The board plainly stated that its "separate ground for rejecting" petitioners' arguments was its independent conclusion that the proposed use was a recreational use that is permitted as a conditional use in an RR zone.

We turn to petitioners' argument that, if the board did make an independent interpretation, it failed to demonstrate compliance with BCC 51.205(1). That ordinance provides, in part:

> "The Planning Official shall provide the official interpretation of the Comprehensive Plan and Development Code. Any member of the public may apply for a Planning Official's Interpretation of provisions of the Comprehensive Plan or Development Code or their application to a specific property, project, or issue. The Planning Official's Interpretation is an administrative land use action. * * * The interpretation cannot constitute a legislative act effectively amending the code or Comprehensive Plan."

BCC 51.205(1). The provision includes a requirement for notice of a decision and, with respect to interpretations pertaining to specific properties, notice to neighboring properties. The official's decision may be appealed pursuant to other provisions of the code. BCC 51.805 - .840.

The planning official also has authority to review and decide all land use applications unless otherwise provided in the code. BCC 51.205(4). The official may refer an application to the planning commission for a public hearing.

*Id.* The decision of the planning official may be appealed to the planning commission and from the planning commission to the board. BCC 51.805. When the planning official determines that a conditional use application is required, the application is referred to the planning commission.

■ A local governing body's interpretation of its own local land use legislation is entitled to considerable deference. As the Supreme Court explained in *Clark v. Jackson County*, 313 Or 508, 515, 836 P2d 710 (1992), review is limited to whether the interpretation "is inconsistent with express language of the ordinance or its apparent purpose or policy." In this case, BCC 51.205(1) clearly sets out a procedure by which any member of the public may obtain from an individual designated "the Planning Official" an official interpretation of the comprehensive plan or development code. The procedure is triggered by an application by a member of the public to that planning official.

Nothing in BCC 51.205(1) states that the procedure it describes is the exclusive method of obtaining an interpretation of the comprehensive plan or development code. Nothing in the provision, for example, states that, in the ordinary course of reviewing applications for various land use decisions, the planning commission and board are themselves precluded from interpreting either the comprehensive plan or the development code without first obtaining an official interpretation from the planning official. Indeed, if petitioners were correct, at no point could the planning commission or the board proceed on an application necessitating an interpretation of the code or the plan without first persuading a member of the public to apply for an interpretation from the planning official and to exhaust all appeals from the planning official's interpretation. We find no evidence in the BCC for such a circuitous and clumsy means of administering it. More to the point, we find no basis for concluding that, in interpreting BCC 51.205(1), the board clearly erred. *Clark*, 313 Or at 515.

Petitioners argue that, regardless of who made the interpretation, LUBA erred in failing to conclude that the

interpretation itself is clearly erroneous. According to petitioners, BCC 51.205(2) prohibits a use that is not specifically listed in one zone if it is specifically listed in another.

BCC 51.205(2) provides:

"The Planning Official may approve a use not specifically listed in the Development Code in any zone, provided that the use is substantially similar in character, scale, and impact to permitted uses in the zone, and is compatible with the purpose of the zone. However, if the use in question is specifically listed in another zone, the Planning Official shall not approve the use through this procedure."

LUBA did not address whether the ordinance—which, by its terms, applies only to decisions of the planning official—even applies to decisions of the board. Instead, it noted that, even if the ordinance does apply to the board, it was not violated in this case. LUBA reasoned that BCC 51.205(2) applies only when a use is *not* specifically listed in the development for a particular zone and is merely "substantially similar" to a use permitted in the zone. In this case, LUBA noted, the board determined that the proposed facility *is* a recreational facility, which is expressly permitted as a conditional use within an RR zone. We find no fault with LUBA's analysis.

Petitioners advance other arguments, which we reject without discussion.

Affirmed.