Argued and submitted April 14, affirmed July 14, 2004

MONOGIOS AND CO.
and Monogios International Company,
a Greek partnership,
*Petitioners,*

*v.*

CITY OF PENDLETON,
*Respondent.*

2003-180, 2003-181; A123906

94 P3d 118

D. Rahn Hostetter argued the cause and filed the brief for petitioners.

Joan M. Chambers argued the cause for respondent. With her on the brief were Kulla, Ronnau, Schaub & Chambers, P.C., and Peter H. Wells.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Petitioners seek review of a decision of the Land Use Board of Appeals (LUBA) affirming the City of Pendleton's approval of a conditional use permit for the development of a city park. Petitioners contend that LUBA erred in upholding the city's interpretation of a comprehensive plan parks and recreation policy as merely a classification system for parks and not a set of mandatory approval criteria. We affirm.

The relevant facts are not in dispute. The city wishes to develop a 15-acre parcel into a park. The land is zoned Low Density Residential (R-1). It also is located on both sides of a tributary of the Umatilla River. Under the city's zoning ordinance, land within 50 feet of a Umatilla River tributary is designated Umatilla River (U-R) Subdistrict. At the time that the city initially proposed the development of the park, local ordinances required the city to obtain a conditional use permit for certain development improvements. The city applied for the permit. The City of Pendleton Planning Commission approved the application.

Petitioners, which own property adjacent to the proposed park, appealed the decision to the Pendleton City Council. The council approved the application, and petitioners appealed that decision to LUBA. Among other things, petitioners argued that the application must be denied because (1) the applicable ordinance requires that a conditional use permit may be granted only if the proposed use complies with the comprehensive plan and (2) the City of Pendleton Comprehensive Plan Park Policy 2 includes a requirement that community parks be at least 30 acres. Although LUBA remanded the city's decision on other grounds, it concluded that the city was correct in asserting that the portions of the comprehensive plan pertaining to community parks on which petitioners relied were not mandatory approval criteria. *Monogios and Co. v. City of Pendleton*, 42 Or LUBA 291, 298-99 (2002) (*Monogios I*).

We affirmed LUBA's remand but disagreed with its decision on the question whether the comprehensive plan constituted mandatory approval criteria. *Monogios and Co. v. City of Pendleton*, 184 Or App 571, 56 P3d 960 (2002)

(*Monogios II*). We concluded that, on the record before us, we could not determine whether LUBA and the city were correct in construing the comprehensive plan:

> "The city's findings offer nothing to answer the question of whether, when, and/or how city comprehensive plan policies regarding parks might apply to the proposed Grecian Heights Community Park. We note again that the city's conditional use requirements call for compliance with the comprehensive plan and that the city believes that at least some plan policies are relevant to this conditional use approval because it addressed them in its findings. With respect to the 'Community Park' policy cited by petitioners, there is nothing in the city's findings explaining whether the policy is simply descriptive of a particular variety of park, or whether it is intended to be a substantive criterion that will control approval of some park facilities. The city's findings simply do not offer a basis upon which petitioners or LUBA could come to understand the role played by the comprehensive plan's park policies generally or the 'Community Park' policy specifically. If the policy or policies are not applicable now but will become so at a later stage of the park development process, the city is obliged to say so in response to petitioners' challenge.

> "Given those circumstances, we must conclude that LUBA erred in not requiring the city to address either why the 'community park' policy was satisfied or why that policy is not applicable. Consequently, LUBA's remand to the city should direct the city to address the plan policy and its applicability to the proposed development. If the policy applies at some other point in the approval process, that fact should be explained."

*Id.* at 576 (citation omitted).

On remand, the council again approved the city's conditional use permit application. Petitioners again appealed to LUBA, which concluded that the council again had failed to articulate whether the comprehensive plan stated mandatory approval criteria or simply aspirational or descriptive policies. *Monogios v. City of Pendleton*, 44 Or LUBA 576, 582 (2003) (*Monogios III*).

Following remand from LUBA's decision, the council concluded that its comprehensive plan includes a park classification system that lists types of parks but does not provide mandatory park development criteria. In a detailed explanation, the council stated:

"Comprehensive Plan Park Policy 2 is a park classification system. It does not provide mandatory park development criteria. Comprehensive Plan Policy 2 sets forth four classifications for parks within the park system, (A) Play parks and play lots, (B) Neighborhood parks/playgrounds, (C) Community parks, and (D) Special recreation areas.

"Comprehensive Plan Policy 3 designated the various City parks with one of the classification designations, regardless of whether the individual park contains all of the aspirational features listed in the four categories of park facilities. The City of Pendleton has never interpreted the Comprehensive Plan park policies to be approval criteria for the development of individual parks. Pursuant to the provisions of the R-1 zone, a 'city park' is a use permitted outright in the R-1 Low Density Residential zone. 'City Park' is defined as 'A recreation area dedicated and preserved [for] public usage.'

"* * * * *

"In the park classification system, pursuant to Comprehensive Plan Park Policy 2A, play parks are intended to serve the population within a one-quarter mile radius of the park. Pursuant to Comprehensive Plan [Park] Policy 2B, neighborhood parks/playgrounds are intended to serve the population within a one-half mile radius. Pursuant to Comprehensive Plan Park Policy 2C, community parks are intended to serve the community within a one mile radius. The language in the community park section is not as clearly worded as in 2A and 2B. Park policy 2C refers to 'city-wide use within a maximum distance of one mile walking and/or half-hour riding.' Ultimately, this is an aspirational goal, encouraging the City to establish multiple community parks, so that no one in the City of Pendleton is more than one mile from a community park facility. That goal is aspirational and may never be something that is financially achievable for the City of Pendleton. Similarly, the provision in the Comprehensive Plan Policy[,] that says that minimum size for a community park is 30 acres, is also aspirational. That goal is something the City would like to

achieve, but it may not be financially possible. These policies are designed to encourage the establishment of additional parks. The City has never found [them] to be approval criteria. The City of Pendleton, like many other communities, is faced with hard economic choices. The City has determined that it would be better to have a 15-acre park than no park at all. Because a 15-acre park would more likely include more of the descriptive amenities listed in the Comprehensive Plan Park Policy for community parks, it is classified as a community park, even if it does not meet the aspirational goal for park size.

"It is the finding of the City Council that neither the reference to a 'minimum' 30 acre park size nor the reference to 'maximum' distance of one mile walking distance and/or half-hour riding standards are mandatory approval criteria. Both are considered aspirational."

City Council of the City of Pendleton Final Order, File No. CUP02-03, 4-5 (Oct 7, 2003).

Petitioners once again appealed to LUBA. This time, LUBA upheld the council's decision. *Monogios v. City of Pendleton*, 46 Or LUBA 356, 364 (2004) (*Monogios IV*). LUBA concluded that petitioners had failed to demonstrate that the council's interpretation of its own community park policy was inconsistent with the express language of the policy or inconsistent with its purposes. *Id.* at 361-62.

Petitioners once again seek judicial review of LUBA's decision. They contend that the city council's decision is contrary to the language of the community park policy, which requires a minimum park size of 30 acres.

Meanwhile, the city council amended the Umatilla River Subdistrict zoning provisions to exempt the development activity at issue in this case from those activities requiring the city to obtain a conditional use permit at all. The new ordinance provides:

"City parks are hereby determined to be consistent with the purpose of this subdistrict and fully compatible with the existing open-space and recreational utilization of the river system. Therefore City parks and development activity

therein are exempt from review and do not require a conditional use permit or discretionary review under the provisions of this section[.]"

Pendleton Zoning Ordinance No. 3250, § 113 (2004). In light of the adoption of the new ordinance, we asked the parties to address whether the petition now is moot. Specifically, we asked whether the city now intends to abandon the conditional use permit under review and, if not, what are the practical consequences of a decision as to the validity of the permit.

In response, the city reported that, notwithstanding the adoption of the new ordinance, it does not intend to abandon the permit because it is currently litigating the status of the park and permits for work in the park in federal court. According to the city, abandoning any rights under the previously issued permits "would place the City in a difficult position in regards to the other litigation filed by Petitioner[s]." The city explained that, among other things, abandoning the permit would "put the City in the position of having to remove the improvements that were lawfully constructed in accordance with the previously issued permit, and that creates potential problems for the City with the pending Federal litigation."

■ We begin with the question whether the adoption of the amendment to the applicable ordinance renders the petition moot. The Supreme Court has explained that "[c]ases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties, will be dismissed as moot." *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993). By the city's own description, it appears that a decision in this case as to the lawfulness of the city council's and LUBA's decision will have practical consequences to ongoing litigation concerning the rights of the parties. Petitioners have offered no argument to the contrary. We therefore turn to the merits.

■ At issue is whether the city council's interpretation of its own comprehensive plan is inconsistent with the express language of the plan or its apparent purposes or policies. ORS 197.829(1)(a); *Clark v. Jackson County*, 313 Or 508, 515,

836 P2d 710 (1992). The express language in dispute is as follows:

"POLICIES

"1. It shall be the policy of the City of Pendleton to regard one acre of gross recreation land per 100 population as the optimum standard for the provision of active and passive recreational space, exclusive of schools, special recreation areas, national and state park facilities. The [C]ity shall regard two-thirds acre per 100 population as the minimum standard for recreation land use.

"2. The park classification system and standards for the City of Pendleton shall consist of four types, which are:

"A. Play parks and play lots shall be provided only when necessary to provide recreation opportunities for small youngsters residing in the immediate neighborhoods when no other developed sites (a neighborhood park or a community park) are available. Whenever possible play lots and play parks can be developed in conjunction with other small sites required for municipal purposes or on school sites as well. They shall be designed to serve the population [within] one-fourth (1/4) mile radius whose access shall be minimally obstructed by major barriers to pedestrian traffic such as arterial streets, railroads and rivers or topography. The type of equipment should generally include children's swings, slides, see-saws, drinking fountains, climbing devices, and benches. Minimum size: 10,000 sq. ft.

"B. Neighborhood Parks/Playgrounds shall be designed and equipped to provide for quiet relaxation as well as to allow for active play and should include the neighborhood play lot. They shall be designed to serve the population within a one-half mile radius whose access shall be minimally obstructed by major barriers to pedestrian traffic such as arterial streets, railroads, and rivers or topography, and whenever practical shall be located adjacent or in conjunction with play lots since the same location servicing area criteria applies. The equipment and activities provided should include benches, restrooms, play lot equipment, [a] hard surface sport area (tennis, handball, etc.), and [a] turf area (softball). Minimum size: five acres.

> "*C. Community Parks are to be located and designed to be separated from any other major organized recreational area and equipped to provide major facilities and uses such as softball, baseball, archery, horse shoes, golf driving, tennis, handball, indoor passive facilities, rest-rooms, etc., for city-wide use within a maximum distance of one mile walking or half hour riding. Minimum size: 30 acres.*
>
> "D. Special Recreation Areas.
>
> "(1) Acquisition, development, and main-tenance of a Parkway system shall include sufficient meas-ures necessary to preserve and promote the aesthetic appearance of the community and to serve as an infrastruc-ture of the entire City park system. * * *
>
> "(2) Special Recreation Facilities and Activities include recreation centers, swimming pools, golf courses, boating, skiing, camping, ice and roller skating, special crafts, and similar major activities. These activities may be located within Community Parks or adjacent/within school grounds, but are usually found as a separate entity[.]"

Pendleton Comprehensive Plan, Recreation Plan Policy, CP 20-22 (emphasis added). The policy is followed by a series of "programs" designed to implement the stated policies. For example, accompanying what the parties have denominated "Policy 2" is the statement that the city must "[e]valuate the City's existing parks to determine their compliance with the set-forth policy standards" and must also "[d]evelop appro-priate cost-effective programs to rectify identified short-comings."

The language of the policy and its implementing pro-grams thus expressly contemplate a set of goals, which the city may or may not be able to satisfy at a particular time. By its terms, the policy speaks to future city planning efforts. There is nothing in the policy language that refers to approval or disapproval of particular applications.

Petitioners insist that, notwithstanding the absence of wording referring to the approval or disapproval of appli-cations, LUBA's and the city council's interpretation of the policy founders on the use of the word "standards" and on the

specific "minimum" parcel sizes that are mentioned in it. The reference to "standards" in the policy, however, is ambiguous at best. It appears in the introductory clause: "The park classification system and standards for the City of Pendleton shall consist of four types[.]" The reference to "standards," if anything, appears to refer to standards of classification, not standards for determining whether to grant or deny a particular application. At the very least, construing the reference in that manner is plausible and not inconsistent with the language of the policy.

Petitioners also refer to the fact that the policy refers to "minimum" park sizes. Petitioners fail to explain, however, why that reference can refer *only* to a mandatory approval criterion. The city interprets the references to the minimum park sizes as "aspirational" and points to the fact that the policy expressly requires programs to address instances in which parks do not conform to the goals stated in the policy. Nothing in the wording of the policy renders that interpretation unlikely or unreasonable. Indeed, if anything, what is unlikely is petitioners' suggestion that the policy would require the city to adopt an "all-or-nothing" position with respect to the creation of public parks, that is, that the policy would require the city to determine that no park at all is preferable to creating a park that does not satisfy all of the classification standards.

We conclude that LUBA did not err in determining that the city council's interpretation of its comprehensive plan was not inconsistent with the express language of the plan or its apparent purposes or policies.

Affirmed.